# VOL. 107, OCTOBER TERM, 1891.    527

The State ex rel. Third Nat. Bank v. Smith.

THE STATE *ex rel.* THIRD NATIONAL BANK V. SMITH *et al., Judges.*

IN BANC.

| 107 | 527 |
| 125 | 635 |
| 107 | 527 |
| 129 | 590 |
| 107 | 527 |
| 140 | 124 |
| 107 | 527 |
| 143 | 36 |
| 107 | 527 |
| 85a | 251 |

1. **Supreme Court:** COURTS OF APPEALS: JURISDICTION. The supreme court has superintending control over the courts of appeals by *mandamus,* prohibition and *certiorari,* but no appellate jurisdiction over them.

2. ———: ———: ———. Under the provision of the constitution for the transfer to the supreme court of any cause in the court of appeals wherein a judge of the latter shall deem the opinion rendered as " contrary to any previous decision of any one of said courts of appeals, or of the supreme court, " the question whether or not the appellate judge deems such conflict of opinion to exist is one for his sole determination, and if he believes such conflict exists it is his duty to say so in unmistakable terms. The mere fact that he has cited opinions of the supreme court in argument in a dissenting opinion is not sufficient to indicate that he deems the opinion from which he dissents in conflict with such citations, and in such case it is not the duty of the court of appeals to certify the cause to the supreme court.

3. **Mandamus:** APPEAL. The writ of *mandamus* is not available as a substitute for an appeal.

*Mandamus.*

WRIT DENIED.

*Wm. S. Shirk* and *Charles E. Yeater* for relator.

(1) The fact that the term has passed during which one of the courts of appeals should have certified and transferred a case to the supreme court does not divest the power of the supreme court to afford relief by *mandamus,* and by that measure to order such a case certified and transferred to it for a final determination. *State ex rel. v. Lewis,* 71 Mo. 170; *State v. Judges,* 2 Penn. (N. J.) 541; Moses on Mandamus, p. 28. (2) Whether one of the judges of either one of the courts of appeals has deemed a decision contrary to any previous decision of either one of said courts of appeals, or of the supreme court, is necessarily to be determined only by the express declaration of such judge, except in case he

should file a separate dissenting opinion, in which event, in the absence of any declaration, it becomes purely a question of law, to be determined on the face of such dissenting opinion. *Blaufus v. People*, 69 N. Y. 107 ; 25 Am. Rep. 148 ; *Leonard v. Grant*, 5 Fed. Rep. 16 ; *Express Co. v. City*, 8 Ky. Law Rep. 908. ( 3 ) The constitution gives to the supreme court a general superintending control over all inferior courts, including the two courts of appeals, which is broad and unlimited in its extent, and comparable in the issue of *mandamus* to the powers of the king's bench at common law. Amendment, Const. 1884, sec. 8 ; Const., art. 6, sec. 3 ; *State ex rel. v. Philips*, 97 Mo. 341.

*Samuel P. Sparks* for respondents.

BLACK, J.—This case is now before us on a return made by the judges of the Kansas City court of appeals to an alternative writ of *mandamus*, and the question is whether a peremptory writ should be issued notwithstanding the return.

The facts are these: The relator, the Third National Bank of Sedalia, commenced a suit against Mortimer, Monroe and Edward Garton in the Pettis county circuit court. The property of the defendants was attached under the writ, and the defendants were duly served with summons. On the petition of the defendants, the venue of the cause was changed to the Johnson county circuit court. The defendants then withdrew the plea in abatement, and filed a motion to quash the writ of attachment, on the ground that it had been issued on an insufficient affidavit. The affidavit is in due form and sets out a good ground of attachment. Mr. Parker, the president of the bank, made oath to it; but in the hurry he failed to sign it, and the clerk who administered the oath neglected to sign the jurat. The circuit court permitted the plaintiff to file an amended affidavit, and then overruled the motion to quash. The cause proceeded to judgment against the defendants, and they appealed to the Kansas City court of appeals.

That court, by an opinion in which all the judges agreed, came to the conclusion that the paper filed for an affidavit was a nullity, and, therefore, not amendable. Accordingly, that court reversed the judgment and remanded the cause. On a motion for rehearing two of the judges adhered to their former opinion, and Judge SMITH filed a dissenting opinion. Thereupon the plaintiff commenced this proceeding, praying this court to direct that court to certify and transfer the cause to this court under section 6 of the amendment to the constitution adopted in 1884. The relator makes the opinion filed in that cause part of the pleadings in this case. The averment is that Judge SMITH deemed the opinion of his associates in conflict with seven cases in this court and two reported in the appeal reports.

The judges of that court all join in a return, in which they say they refused to certify the cause to this court for these reasons: *First*, because the decision of the court was not deemed by Judge SMITH contrary to any previous decision of either court of appeals or of this court; *second*, because they were not asked to certify the cause here during the term at which the decision was rendered.

From the opinions filed on the motion for a rehearing it appears Judges GILL and ELLISON were of the opinion that the affidavit was a nullity, and, therefore, not amendable, since it was not signed by the affiant or the clerk. They were also of the opinion that the defects were not cured by pleading in abatement. Judge SMITH, in his dissenting opinion, first lays down the proposition that an affidavit consists of three parts, and then holds that, though this affidavit was defective in two respects, still the statute gave the circuit court authority to allow the amendment. He then says an affidavit is good, though not signed by the affiant, and cites cases in this court in support of the proposition, and holds that the affidavit was defective in one *essential* respect only, and that it was amendable. He

was of the further opinion that defendants waived the defects by pleading to the affidavit. In the course of his opinion he cites several cases from this court and reasons from them by way of analogy ; but he does not claim that any of them are decisive of the case he had in hand. This is the substance and effect of his dissenting opinion.

The section of the constitution, under which it is claimed the cause should be certified to this court, is in these words : " When any one of said courts of appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said courts of appeals, or of the supreme court, the said court of appeals must, of its own motion, pending the same term and not afterwards, certify and transfer said cause or proceeding and the original transcript therein to the supreme court," and it is then made the duty of the supreme court to hear and determine the cause.

It is to be observed in the first place that the Kansas City court of appeals has exclusive and final appellate jurisdiction in a large class of cases, and it is conceded on all hands that the case in question falls within that class. This court has a superintending control over that court by the writs of *mandamus*, prohibition and *certiorari ;* but it has no appellate jurisdiction whatever from that court. It must, therefore, be perfectly manifest to anyone that the question which we have to deal with at this time is not whether that court erred in its decision ; but the simple question is, whether Judge SMITH deemed the opinion of his associates in conflict with any prior decision of this court or either of the courts of appeals. The question is then presented who is to say what his judgment or opinion was in respect of this question ? The constitutional provision will admit of but one answer, and that is this, that he must decide the question for himself. Being of the opinion that the decision was contrary to

some prior case, it became his duty to so say, and to say it in terms as to which there could be no mistake.

Now he has not said that he deemed the opinion of his associates in conflict with any previous decision. He has not used language to indicate that he entertained any such an opinion; nor did he intimate that the cause should be certified and transferred to this court. What we, therefore, are asked to do in this case is to take up his dissenting opinion and from it spell out by a process of reasoning that he was of the opinion that the decision of the other judges was in conflict with some prior opinion, and this we are asked to do in spite of the return made by him and the other judges under the sanction of their official oaths. We are in some way expected to make him say what he did not say for himself. This we have no right to do. The constitutional provision has conferred no such power upon this court, and such a power is not to be assumed.

The duty of that court to certify the cause to this court did not and could not arise until one of the judges said plainly that he deemed the opinion of his associates in conflict with some prior opinion. As aptly stated in *State ex rel. v. Philips*, 96 Mo. 571: "It is for the dissenting judge to solve that question in his own mind and conscience, give it expression in authentic form upon the records of the court, in express terms; and only when this is done does it become the duty of the court to certify and transfer the cause."

In that case, as in this, we were asked to take up a dissenting opinion of one of the judges of the court of appeals, and from it deduce the conclusion that he deemed the majority opinion in conflict with some prior decision, though the judge had not so stated, but we promptly declined the task and made answer to the request in the language before quoted.

The section of the constitution was designed to furnish a means by which the courts of appeals can keep their rulings in harmony and also in accord with the rulings of this court. But the amendment has other

objects in view which are not to be cast aside. Those courts were given exclusive and final appellate jurisdiction to enable this court to dispose of its crowded docket. To grant the writ in this and like cases, is to make the writ of *mandamus* perform the functions of an appeal, and thus do indirectly what the constitution says shall not be done directly.

It follows from what has been said that the writ should be, and it is, denied. SHERWOOD, C. J., and GANTT and THOMAS, JJ., dissent. Judges BRACE, BARCLAY and MACFARLANE concur.

GANTT, J. ( *dissenting* ).—I cannot agree to the opinion of the majority of the court. By the amendment to the constitution of Missouri, adopted at the general election held in November, 1884, provision was made for two courts of appeals, to be known as the St. Louis court of appeals and the Kansas City court of appeals.

The St. Louis court of appeals had been created by the constitution of 1875 ; and this amendment extended its jurisdiction over a large number of the counties of the state and by the amendment the Kansas City court of appeals was given certain appellate jurisdiction in all the counties of the state not embraced in the jurisdiction of the St. Louis court of appeals. By section 3 of the amendment power was conferred on the legislature to create one additional court of appeals. By section 6, it was provided, " when any one of said courts of appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said courts of appeals or of the supreme court, the said court of appeals must of its own motion, pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the supreme court, and thereupon the supreme court must rehear and determine said cause or proceeding as in case of jurisdiction obtained by

ordinary appellate process; and the last previous rulings of the supreme court on any question of law or equity shall in all cases be controlling authority in said courts of appeals."

Section 8 provides: "The supreme court shall have superintending control over the courts of appeals by *mandamus*, prohibition and *certiorari*." The history of this amendment is so recent that its object is well known. Owing to the crowded condition of the docket of this court at that time, an effort was made to relieve it by the creation of these courts of appeals. This amendment had two main purposes in view. One was to relieve the overcrowded docket of this court, and to prevent delays in the administration of justice; the other was to keep these courts of appeal in accord with each other in their decisions, and with the rulings of this court. Hence it is made the duty of either of said courts when one of the judges sitting therein shall deem one of its decisions contrary to any previous decision of any one of said courts or of this court to certify the transcript to this court.

Previous to the adoption of this amendment an appeal would lie from the St. Louis court of appeals to this court. It seems clear that the legislature when it submitted this amendment and the people when they adopted it, intended and designed that every citizen and litigant should have the equal protection of the law within this state, and there should be uniformity in the administration of justice. Had it been understood that one tribunal in the eastern portion of the state could declare the law one way and another tribunal in the western portion, another way, and that no provision was made to prevent such a result, in our opinion the amendment would have been defeated. But the sixth section commended it to the bar and the people alike, because by it it was thought a simple mode was provided to insure uniformity in the decisions of all the courts; and to provide against oversight or error this court was made the final arbiter, with power of superintendence over all inferior courts, and courts of appeal

especially, with power to issue writs of *mandamus*, prohibition and *certiorari*. These courts have met the expectation of the people in creating them. They have transacted an immense amount of business, and by their learning have reflected honor upon the judicial department of the state.

From time to time, of their own motion and in obedience to the constitution, they have certified their differences to this court, and the utmost harmony and good will have characterized the official intercourse of the two courts with this court. When a difference has existed it has been such only as would naturally arise from a difference of opinion, and, as the constitution made this court's decision final, it was accepted as such.

It must be conceded then, that in the exercise of the jurisdiction conferred on them by the constitution, it is the imperative duty of those courts to accept "the last previous rulings of this court on any question of law or equity as controlling authority." So long as this is done no occasion will arise for the interference of this court.

It is only when one of the judges of one of those courts *deems* some decision of this court contrary to some previous decision of this court, his own, or the other appellate court, that this court is given jurisdiction to determine the cause. We state the rule thus, because it is clear to us, that if one, of the appellate judges should, in the language of BRACE, J., in *State ex rel. v. Philips*, 96 Mo. 570, "give expression in authentic form upon the records of his court," that, in his opinion, the decision of the majority in any given case is contrary to the rulings of this court, that then it becomes the duty of that court to certify it to this court, but failing so to do it will in nowise affect the right of this court, after the lapse of the term of said appellate court to compel it so to do by *mandamus*. *State ex rel. v. Philips, supra; State ex rel. v. Lewis*, 71 Mo. 170 ; *State ex rel. v. Philips*, 97 Mo. 331.

And this court will not attempt to interfere with the judicial discretion of either of said judges, and undertake to decide for him in advance. It must await his action, *but when he acts and declares in an official manner that the action of his colleague is contrary to the decisions of this court, of his* own courts or of the other appellate court, the jurisdiction *eo instanti* attaches in this court. So long as the term of the appellate court continues at which its decision is made final, it is the sole prerogative of that court to make the order of transfer to this court, but if it adjourns without making the order as directed by the constitution the right of the losing party is not affected ; he is entitled to a *mandamus* from this court to compel the action directed by the constitution. And it must be kept in mind that it is not at all necessary that the opinion or decision of the majority of the appellate court shall be in conflict with the decision of this court. It is sufficient if one of its judges shall deem it so to be. This, then, is the sole question in this case. We are not now called upon to say whether the opinion of the majority is in accord with the rulings of this court, or that Judge SMITH's opinion is or is not in consonance with the decisions of this court.

Nor are we called upon to direct Judge SMITH to put his dissent in a different form, or to say anything he would not say for himself, nor are we at this stage requiring the majority of the Kansas City court of appeals to change their opinion or record in any way. This proceeding is simply to ascertain whether in relator's case *an opinion was rendered by a majority of that court against relator, and whether in that case Judge* JACKSON L. SMITH, *one of the judges of said court, in an authentic manner and according to the practice of that court, expressed an opinion that the majority opinion was contrary to the decisions of this court, and the previous decisions of that court.* The respondents, in their return, say they *were not requested to certify the case to this court.*

As the constitution is explicit in requiring them of their own motion to send the case here, if the other conditions exist, we must hold so much of the return insufficient as a matter of law.

This brings us to that portion of the return which is as follows: Respondents "state that the decision rendered in said cause was not deemed by Judge SMITH contrary to any previous decision of any of the said courts of appeals, or of the supreme court." And here arises the question, *is the return, or the record made at the time in the appellate court to control?* As the return does not traverse or deny that Judge SMITH officially and according to the practice of his court, filed and delivered the dissenting opinion set forth in full in the application of the relator for this writ, it is taken as confessed ; and, in the consideration of this portion of the return, this dissenting opinion and the return must be read together, and we take it that *it is the record made at the time that must control,* and not the opinion that court *then had of its effect,* or *now has.* Courts of record speak only by their records, and parties have a right to rely on them. High's Ex. Legal Rem. [ 2 Ed.] sec. 479 ; *King v. Commissioners,* 3 Ad. & El. 544.

It seems to us clear that if Judge SMITH in his dissenting opinion clearly and unmistakably indicated that he deemed the majority's opinion contrary to former decisions of this court, or of his own court, and this court can, by inspection of that record, find that fact, then the question is settled for us by the constitution. Some stress is laid on the fact that Judge SMITH did not use the words " deem contrary," etc., anywhere in his dissenting opinion. We regard this as entirely too technical and superficial, in a matter of such grave importance. It was a maxim of the common law that " he who considers merely the letter of an instrument goes but skin deep into its meaning." "Any other words of equivalent import will answer the purpose just as well."

VOL. 107, OCTOBER TERM, 1891.        537

The State ex rel. Third Nat. Bank v. Smith.

Coming then to an inspection of the record of the court of appeals and the dissenting opinion of Judge SMITH, we find that the majority of the Kansas City court of appeals decided that an affidavit for attachment filed in the cause, though in proper form otherwise, which is not signed by the alleged affiant, and the jurat is neither signed by the clerk, nor attested by the seal of the court, is a nullity, and cannot be amended, and confers no jurisdiction to issue a writ of attachment, and the fact of defendant appearing and pleading to a subsequently filed affidavit does not waive the necessity of a proper affidavit in the inception of the attachment proceeding, which is a proceeding *in rem*, and the means provided by the statute must be pursued to bring into the jurisdiction of the court the property of the defendant.

From this same record, it appears that Presiding Judge SMITH dissented and held that "the failure of the affiant to sign the affidavit and the want of a jurat thereto were not such an insufficiency as prevented the court from acquiring jurisdiction, and there was no error in permitting the affidavit to be amended as provided by statute, and that the defendant by pleading in abatement waived the defects in the affidavit."

There can be no doubt these opinions of the majority and minority *are contrary to each other.* Now, in all candor, when Judge SMITH in his dissenting opinion asks the question, "Could the court in the face of the statutory interdict refuse to permit the plaintiff to file a good and sufficient affidavit?" and cites *Musgrove v. Mott,* 90 Mo. 107, in which this court cites *Henderson v. Drace,* 30 Mo. 362, what was his purpose? Did he not deem those decisions of this court of controlling authority, and binding on him and supporting his view? And, again, when he says, "In *Norton v. Flake, Adm'r,* 36 Mo. App. 698, it was said, 'the defendant's contention is that the first affidavit being insufficient to confer jurisdiction that it could not be amended.' It may well be questioned whether the first branch of this

contention is true, and if so, whether or not the broad and comprehensive provisions of the statute do not authorize in express terms the exercise of the power of amendment in such case." " The statute has made no distinction as to the power of amendment of affidavits for attachment." Did he not deem that opinion of his own court, an opinion written by himself, as in conflict with that of the majority, and supporting his own view? If not, why cite these cases? They are not cited on mere collateral issues. The issues in this case are sharp, clear and narrow. There are but two points and they differ radically on both. Now, if a judge in maintaining himself cites precedents, is it not fair and reasonable that he thinks they support and strengthen his argument? Especially, if he be the judge of a court that is bound by the law of its existence to take the opinions of another court as binding, if he quotes the opinions of that court, must we not presume he deemed then holding his view, and, if so, binding upon him? If not, why incumber his decision with them?

But, again, one of the points upon which Judge Smith differed from his brethren was, whether the affidavit must necessarily have been signed by the affiant to make it an affidavit; they held it void without this, he held it not void and cited *Smith's Ex'r v. Benton*, 15 Mo. 371 ; *Laswell v. Church*, 46 Mo. 279 ; *Crum v. Elliston*, 33 Mo. App. 591, two decisions of this court and one of his own court. The citations of these authorities as made by Judge Smith have but the one meaning, and that is that they fully sustained him in deciding that the signing of the affiant was not essential, and, so stating, he must be understood as holding the opinion of the majority was in conflict with those cases. But again he cites the case of *Bergesch v. Keevil*, 19 Mo. 127, an action of replevin where the affidavit was required, but the jurat had been omitted, and the court permitted it to be verified *nunc pro tunc;* but it is sufficient to say that by reference to his opinion he fortifies his strong and forcible dissent at every point

by reference and citation of the decisions of this court and the Kansas City court of appeals. If he did not deem them as supporting his own opinion, it is not easy to see for what purpose he used them. Certainly not to strengthen the cause of the opinion he was attacking with so much ability, nor as mere ornaments to his own opinion that needed no such embellishments.

In the second paragraph of his opinion Judge SMITH insists, that ignoring the amended affidavit altogether, inasmuch as defendant filed his plea in abatement to the original affidavit, defective, according to his view, but a nullity according to the majority, he thereby waived all objections to it, and cited as authority: *Henderson v. Drace*, 30 Mo. 362 ; *Scovill v. Glasner*, 79 Mo. 452, decisions of this court, and *Hill v. Morris*, 21 Mo. App. 256 ; *Silver v. Railroad*, 21 Mo. App. 51 ; *Bradley v. Ins. Co.*, 28 Mo. App., decisions of the courts of appeal. Now there can be no middle ground taken in this case. We cannot say as in some cases, that his remarks were *obiter dicta*, nor that they were on collateral or immaterial issues. Either he was right, and the majority wrong, or the majority right, and he was wrong.

Nor can it be said in this case as was said in *State ex rel. v. Philips*, 96 Mo. 570, that "there is no disagreement in the opinion between Judge HALL and the majority of the court upon the legal proposition that 'ratification must be pleaded,' in support of which he cites *Wade v. Hardy*. That citation would not have been out of place as an introduction to the language in which the position of the majority of the court is stated."

In this case there is no agreement as to the law whatever. Judge SMITH's syllabus would not grace Judge GILL's opinion, and the syllabus of Judge GILL's opinion would be wholly misleading as a caption or title to Judge SMITH's. We have not been able to come to any other conclusion than that the dissenting opinion of Judge SMITH in this case clearly demonstrates that

he deemed the decision of the majority as written by Judge GILL contrary to the decisions of this court and that court also. We can only pass upon the official document filed by him. We have endeavored to look at the spirit and reason of the case and give our interpretation of it in keeping with the organic law of the state.

The policy of keeping the decisions of all the courts in harmony has been accentuated by the last amendment creating two divisions of this court. The policy of the state is clear and unmistakable, and is just and right in principle.

I think that the motion for a peremptory writ in the nature of a demurrer to the return should be sustained. I am authorized by SHERWOOD, C. J., and THOMAS, J., to say they concur in my views.

SHERWOOD, C. J. ( *dissenting* )—I. Section 6 of article 6, of the amendment to our state constitution adopted in 1884, provides that : " When any one of said courts of appeals shall, in any cause or proceeding, render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said courts of appeals or of the supreme court, the said court of appeals must, of its own motion pending the same term and not afterward, certify and transfer said cause or proceeding, and the original transcript therein to the supreme court, and thereupon the supreme court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process ; and the last previous rulings of the supreme court on any question of law or equity shall in all cases be controlling authority in said courts of appeals." Upon this section the relator relies on his motion for a peremptory writ.

The plain purpose and central idea of this section is to keep the courts of appeals in accord with each other in their rulings, and with this court. The duty of the judges of these courts of appeals in this regard

VOL. 107, OCTOBER TERM, 1891.      541

The State ex rel. Third Nat. Bank v. Smith.

could not be made plainer by the use of any other language which could be employed ; the words used are *mandatory*, and admit of nothing short of positive and full obedience to their command.

Now it is evident from an examination of the majority opinion and the dissenting opinion, that in the opinion of the majority their ruling was in accord not only with the previous decisions of this court but with those of the courts of appeals.   And it is equally evident that in his dissenting opinion the views of SMITH, P. J., are diametrically opposed to those of the majority of the court on two salient points :   *First.*   He holds that the affidavit in the cause was amendable and, therefore, properly amended, and that the attachment proceedings were not void.   *Second.*   He holds that in any event the defendants, their motion to quash having been denied, *waived* and cured any defects in the original affidavit, by pleading in abatement and going to trial on the issue thus raised.   Nothing can be clearer than this.   Nor was it necessary that the dissenting judge "*should so state in so many words*" that he *deemed* the decision of the majority "contrary to any previous decision of any one of said courts of appeals or of the supreme court," because, *first*, it is so apparent from his citation of authorities and reasoning thereon, that the decision of the majority *is* contrary to the former rulings of this court and of the courts of appeals, as to require no express declaration to that effect; "it goes without saying;" because, *second*, unless the presiding judge *did* deem the decision of the majority contrary to former rulings, etc., then his dissent is without force, point or meaning. But his direct and forcible attack on the reasoning of the majority leaves no room to doubt *what* he then thought of the majority opinion.

There is no magic in the words, "*shall deem contrary*," etc.   Any other words of equivalent import will answer the purpose just as well ; nor does the constitution require the use of the words quoted in order to

give origin to the performance of that duty which section 6 enjoins upon each of the courts of appeals when the exigency therein provided for shall arise. Nor can the views of a dissentient judge in such case, if they undergo a change after the expiration of the term at which they are delivered, affect the duty enjoined by the section in question, or affect the supervisory control of this court conferred by section 8 of the same constitutional amendment.

The duty of the court of appeals in cases like the present is based upon the attitude and utterances made and taken by the judge who disagrees with his associates, as *then* stated and made, and those utterances must speak for themselves. As before stated that duty is mandatory ; it needs neither suggestion nor adventitious aid to bring it into action. The language of the constitution is : " The said court of appeals *must*, of its *own motion*," etc. This language effectually disposes of that portion of the return, wherein the respondent judges state that they were not "asked," etc. *Invitations* in such instances are wholly unnecessary and uncalled for ; constitutional etiquette does not require them.

II. Upon the argument of this motion for the issuance of the peremptory *writ*, it was conceded that the fact that the term had expired at which the majority and dissenting opinions were delivered did not affect the jurisdiction of this court, if the pleadings herein presented a proper case for its exercise. But if contention had been made that the expiration of the term shut off the power of this court to compel the Kansas City court of appeals to do its constitutional duty, and transfer the cause in question to this court, such contention would have been effectually answered by the case of *State ex rel. v. Lewis*, 71 Mo. 170.

For reasons already given in my opinion, a peremptory writ should be awarded.

As expressing my views and as my dissent herein, I hereby refile the foregoing opinion.