## JORDAN v. DAVIS, Appellant.

### Division Two, March 17, 1903.

1. **Trial by Judge:** FINDING OF FACTS: APPEAL. The finding of facts by the court sitting as a jury and the giving of a general verdict, are incontrovertible on appeal, unless declarations of law, showing upon what theory the case was tried, were asked and refused.

2. ———: ———: ———: MEMORANDUM OF FINDING. A memorandum of the finding of the judge handed to the clerk as a basis for the judgment, containing nothing but a finding that defendant's counterclaim as to some items was barred by limitations and naming the amounts in other items for which he was entitled to judgment, is not a declaration of law, and is not reviewable on appeal unless there were some declarations of law asked and refused.

3. **Employment as Attorney:** DISMISSAL FOR FAILURE TO SECURE COSTS: REMEDY. Defendant's remedy in a suit against him to recover money collected by him as attorney, is not to set up as a counterclaim what his problematical damages were because a suit in which he was plaintiff's attorney, on a conditional employment of one-fourth the amount recovered, was dismissed for the failure of plaintiff, who was a non-resident, to give security for costs, but his course for such services was a separate suit for damages for breach of contract or a *quantum meruit* for whatever his services were reasonably worth.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Theodore Rassieur* and *Henry M. Post* for appellant.

(1.)   (a)   The services rendered to plaintiff by defendant were in pursuance of the written contract of July 24, 1891. Although the evidence of defendant and the language and date of that paper show that it had reference to the first suit brought on that date, yet the evidence also shows that both parties regarded it as also applying to the second suit.   (b)   The evidence also shows that plaintiff was duly advised, and was well aware, that he would be required to furnish security for costs. Especially was that true of the second suit, as he had learned from experience by the dismissal of the first suit on account of his failure to furnish such security, what the result of a similar failure would be in the second suit. Davis testified positively that he repeatedly called plaintiff's attention to this requirement, and plaintiff promised to comply with it, but failed to do so, and not only did Davis deny having promised to furnish the security, but such an undertaking would have been champertous and illegal. Therefore, plaintiff, by failing to furnish the security, made it impossible for Davis to prosecute the suit, which he was able and willing to do, according to the contract; wherefore, plaintiff became liable to Davis for such damages as he might show he was entitled to. (c)   The measure of defendant's damages is what he would have recovered under the contract if the claim had been successfully prosecuted. Another similar suit had been successfully prosecuted by defendant for plaintiff against Chouteau, and the money collected. The presumption amounts practically to a certainty under the evidence that the suit against Chouteau, covered by this contract, would have been gained, and the

money collected, if it had not been dropped by reason of Jordan's neglect.    3 Am. & Eng. Ency. Law, p. 545; McIlhenney v. Kline, 6 Mo. App. 94; Kersey v. Garton, 77 Mo. 295.    The amount of Davis's claim under this would have been one-fourth of the $31,900, that is, $7,975.    (2)    The court refused the instruction asked for by defendant, and decided the case against defendant on the counterclaims solely on the ground that when the counterclaims were pleaded they were barred by the statute of limitations.    In this the court erred.    (a) The statute did not begin to run until the cause of action accrued to defendant at the time of the dismissal of the second suit, viz., May 11, 1893.    (b)    The contract being in writing, the ten-year limitation applies.    The five-year limitation applies where the writing is of such a character that evidence *aliunde* is required to show a promise to pay.    Carr v. Thompson, 67 Mo. 472; Reyburn v. Casey, 29 Mo. 129; Shelton v. Wyman, 1 Mo. App. 130; Moorman v. Sharp, 35 Mo. 283.    (c)    The running of the statute, whether it be ten or five years, was stopped, not by the filing of the original answer or the amendment setting up a *quantum meruit,* but by the filing of the plaintiff's suit in this case, March 17, 1898, less than five years after defendant's right had ripened into a cause of action. Turnbull v. Watkins, 2 Mo. App. 240; Liebke v. Thomas, 24 Mo. App. 27.

*E. T. Farish* for respondent.

The contract invoked by appellant, and on which his counterclaims were based, is not a promise to pay money or property, but is a contract to give the appellant one-fourth of any money recovered upon condition that the same was recovered.    And under the limitation law of this State any breach of said contract or suit to recover thereon was barred after five years. The statute contemplates not only a promise to pay money or property, but such promise must be unconditional.

BURGESS, J.—This is an action by plaintiff against defendant to recover from him the sum of eight hundred and eighty-one dollars and fifty-eight cents, alleged to have been collected by defendant as plaintiff's attorney on October 26, 1897, and improperly retained by defendant, although demanded of him by plaintiff.

On September 27, 1898, defendant filed an amended answer which is as follows:

"(1) And for amended answer this defendant denies each and every allegation in plaintiff's petition contained.

"This defendant, further answering, and by way of counterclaim, alleges that heretofore, to-wit, on July 24, 1891, plaintiff and defendant entered into a contract in writing, by which defendant, who is a regularly licensed and practicing attorney of the city of St. Louis, Missouri, undertook to carry on as a lawyer on behalf of plaintiff a certain cause brought on that day in the circuit court of the city of St. Louis, Missouri, against one Charles P. Chouteau, for the recovery of thirty-one thousand nine hundred dollars, and which case plaintiff agreed to prosecute with defendant as his attorney to final hearing, and for which service this defendant was to receive the sum of seven thousand nine hundred and seventy-five dollars as compensation under said contract, which contract was in words and figures as follows: 'St. Louis, July 21, 1891. Henry B. Davis, Esq.—Dear Sir: In the case brought by you for me against Charles P. Chouteau, I agree to give you one-fourth of any money recovered, and if there is nothing recovered, then there is no claim on me whatever. Yours truly, Martin P. Jordan.' This defendant, further answering, says that in pursuance of said contract, this defendant in all things performed for plaintiff called for by said contract, but that plaintiff, in violation of his said contract, neglected and refused to perform his part of said agreement and said cause was dismissed for failure of plaintiff to furnish secur-

ity for costs in said cause, whereby this defendant was damaged in the sum of $7,975. This defendant, further answering, says that said contract is herewith filed and marked 'Exhibit A.' Wherefore, this defendant prays judgment against the plaintiff for the sum of $7,975.

"(2) This defendant, further answering, says, by way of counterclaim, that by virtue of the contract herewith filed, marked 'Exhibit A,' between plaintiff and defendant, this defendant was induced to bring an action for plaintiff against one Charles P. Chouteau, which action is entitled Martin P. Jordan v. Charles P. Chouteau, and was filed on July 24, 1891, and is numbered 85859 of the circuit court of the city of St. Louis, and in which action this defendant, under the statutes of the State of Missouri, became responsible for the costs, said plaintiff being a non-resident of the State of Missouri, and which action was, on January 5, 1892, dismissed by the circuit court of the city of St. Louis, for failure of plaintiff to give security for costs in said cause, whereby this defendant became liable to pay, and did pay as the security of plaintiff the sum of twenty-five dollars and twenty cents, for which, with costs, this defendant asks judgment.

"(3) This defendant, further answering, and by way of counterclaim, says that on the tenth day of January, 1893, at the instance and request of the plaintiff, this defendant paid, laid out and expended on behalf of the plaintiff the sum of three dollars, which money has never been repaid to this defendant, although frequent demand has been made therefor. Wherefore defendant prays judgment for said sum of three dollars and costs.

"(4) This defendant, further answering, says that on January 10, 1893, this defendant, at the instance and request of the plaintiff, who was a non-resident of the State of Missouri, brought suit against one Charles P. Chouteau on behalf of the plaintiff, in the circuit court of the city of St. Louis, Missouri, which suit was, on May 11, 1893, dismissed for failure to secure the

costs thereof, whereby this defendant became liable, under the statutes of the State of Missouri, to pay, and did pay the sum of thirty-five dollars and eighty-five cents, for which with costs and interest he asks judgment.

"(5)    This defendant, further answering, and by way of counterclaim, says that heretofore, to-wit, on or about March 16, 1894, plaintiff employed defendant to institute and prosecute a suit in the circuit court of the city of St. Louis against the Wm. Garrels Stave and Iron Company, and that in pursuance of said employment this defendant did prosecute said suit to a final determination, whereby plaintiff became indebted to this defendant for said services in the sum of two hundred and ninety-two dollars and thirty cents, which sum remains wholly due and unpaid, although payment thereof has been frequently demanded. Wherefore this defendant prays judgment for said sum of $292.30 with interest and costs.

"(6)    This defendant, further answering, says, that on or about the second day of January, 1891, plaintiff employed this defendant to defend a case brought against plaintiff by one M. W. Huff and to prosecute a suit for plaintiff against said M. W. Huff in the city of St. Louis. This defendant, further answering, says, that in all things in said cases he fully carried out the instructions of plaintiff and that his services in said causes were reasonably worth the sum of twenty-five dollars, for which with interest and costs he asks judgment.

"(7)    Defendant, further answering, and by way of counterclaim says, that heretofore, to-wit, on or about the 27th day of March, 1894, plaintiff employed defendant to furnish plaintiff with a written opinion in a certain contention between plaintiff and a firm known as Terry Bros., in regard to some real estate in the city of St. Louis, and that in pursuance to said employment defendant furnished to plaintiff an opinion in regard to said transactions which service was of the rea-

sonable value of fifty dollars, for which sum defendant asks judgment with interest and costs.

"(8)   This defendant, further answering, and by way of counterclaim says, that on or about the 12th day of November, 1895, plaintiff employed defendant to give to plaintiff an opinion as to the legal effect of a certain letter written to plaintiff by one Louis Werner, vice-president of the St. Louis Wooden Gutter Company; that in pursuance of said employment, this defendant furnished to plaintiff said opinion.   This defendant further says that the reasonable value of defendant's services in furnishing said opinion is twenty-five dollars, for which with costs and interest he asks judgment.

"(9)   This defendant, further answering, and by way of counterclaim says, that heretofore, to-wit, on or about the . . . day of . . . 1895, plaintiff employed defendant to prosecute a suit in the courts of the city of St. Louis against the John Stecher Cooperage Company.   Defendant further says, that in pursuance of said employment he did prosecute said suit to a final determination, which said service is of the reasonable value of fifty dollars, and for which defendant asks judgment with interest and costs.

"(10)   This defendant, further answering, and by way of counterclaim says, that on or about the 30th day of October, 1897, this defendant, at the instance and request of plaintiff, paid, laid out and expended on behalf of plaintiff, the sum of fifteen dollars and fifty cents for costs in case of plaintiff against the Stecher Cooperage Company and which sum has never been repaid defendant, and for which he asks judgment with interest and costs."

On January 12, 1899, during the progress of the trial, defendant by permission of the court added another count to his answer, which is as follows:

"(11)   For further counterclaim defendant states that from July 24, 1891, to June 1, 1893, at the special instance and request of the plaintiff, defendant rendered professional services for plaintiff in the matter

of plaintiff's alleged claim against one Charles P. Chouteau for the recovery of the sum of $31,900, as follows: That plaintiff consulted with defendant from time to time regarding plaintiff's said demand; that defendant was compelled to make an examination into the merits of said claim, and defendant prepared a petition founded upon said claim, and instituted suit in the circuit court of the city of St. Louis, which suit was subsequently dismissed by the court for plaintiff's failure to furnish security for the costs of said suit; that defendant subsequently again prepared a petition for plaintiff in said matter, and again instituted suit for plaintiff against said Chouteau, which suit was subsequently again dismissed because of plaintiff's failure to furnish security for the costs of said suit; and defendant states that in said suits he also rendered services for plaintiff, in the taking of depositions and examination of witnesses, and was compelled to correspond with plaintiff from time to time regarding said suits; that the services so rendered by defendant for plaintiff in said matter were reasonably worth the sum of two thousand dollars, for which with costs plaintiff prays judgment.''

Plaintiff replied, denying each and every allegation in the answer, and pleaded the five-year statute of limitation to all matters set up in the answer by way of counterclaim.

The case was tried by the court, a jury being waived.

Judgment was rendered for plaintiff for the amount sued for, with interest, less the amount allowed defendant on his counterclaims set up in the 5th, 7th, 8th, 9th and 10th counts of the answer. The amount of the judgment is $649.78.

At the time of the rendition of the judgment the court handed down what is called by the respective attorneys the following memorandum opinion:

''All the items of the counterclaim of defendant except the 5th, 7th, 8th, 9th and 10th, are barred by the statute of limitations.

''On the 5th item $200 should be allowed, on the 7th item $25 should be allowed, on the 8th item $5 should be allowed, on the 9th and 10th items $35.50 should be allowed.''

Within due time defendant filed motion for new trial, which being overruled, he appeals.

As the only questions presented by this appeal are with respect to the ruling of the trial court in holding that the causes of action counted upon in the first and eleventh of the counterclaims is when the statute of limitations began to run, and, whether or not the causes of action were barred as found by the court, it only becomes necessary to state the facts out of which they culminated, and thereafter connected with them.

On the 24th day of July, 1891, plaintiff had a claim against one Charles P. Chouteau amounting to $31,900, for commissions on the sale of a large body of land which he claimed to have sold for Chouteau at his instance and request, and placed the same in the hands of defendant, who is an attorney, for collection, under the writing set forth in defendant's first counterclaim.

The suit was instituted by Davis on the same day, for the amount claimed by Jordan. This suit was dismissed for failure of plaintiff to give security for the costs on January 5, 1893. On the 10th day of January, 1893, the defendant re-instituted the suit. In due time an answer was filed to the petition, and on the 10th day of February next thereafter a motion was filed by defendant's attorney in that case to require plaintiff to give security for costs which was sustained, and the plaintiff given ten days to put up the costs, but having failed to comply with the order of court the suit was again dismissed.

The evidence was conflicting as to who by the terms of an agreement between Jordan and Davis was to secure the costs in that case.

The only instruction asked or given in the case, was one asked by defendant, which reads as follows:

''The court declares the law to be that if the court finds from the evidence that the defendant was at all

times ready, able and willing to perform the services required of him as attorney for the plaintiff in the litigation of Jordan v. Chouteau, and that the plaintiff, notwithstanding said fact, permitted said suits to be dismissed for failure on his part to furnish security for the court's costs, and thereafter failed to prosecute said action for the recovery of the amount alleged to have been due him from said Chouteau, and if the court further finds from the evidence that the sum of $31,900 could have been recovered and collected from Chouteau, if such action had been duly prosecuted by the plaintiff, and that Chouteau was amply solvent and able to respond and pay in full such judgment and costs, if the same had been recovered against him, then under the contract read in evidence and referred to in the counterclaim as 'Exhibit A,' the defendant is entitled to a judgment upon the first item of the counterclaim against the plaintiff for one-fourth of the sum which could have been so recovered.''

This instruction was refused, and defendant excepted.

It has always been held by this court that where the court in trying issues of facts sits as a jury and gives a general verdict the judgment will not be reviewed on appeal or by writ of error, unless declarations of law are asked and refused in order that the appellate court may see upon what theory the case was tried. Unless this is done the finding of the court is incontrovertible here. [Easley v. Elliott, 43 Mo. 289; Wilson v. Railroad, 46 Mo. 36; Weilandy v. Lemuel, 47 Mo. 322; Hamilton v. Boggess, 63 Mo. 233; Henry v. Bell, 75 Mo. 194; Harrington v. Minor, 80 Mo. 270; Gaines v. Fender, 82 Mo. 497; Cunningham v. Snow, 82 Mo. 587; Sieferer v. St. Louis, 141 Mo. 586; Sutter v. Raeder, 149 Mo. 297; Swayze v. Bride, 34 Mo. App. 414; O'Howell v. Kirk, 41 Mo. App. 523; Claflin v. Burkhart's Admr., 43 Mo. App. 226; Morgan v. Railroad, 51 Mo. App. 523; Bozarth v. Lincoln Legion of Honor, 93 Mo. App. 564.]

In Hamilton v. Boggess, supra, it was said:

"When a case is submitted to a court and a jury dispensed with, the facts upon which the court bases its judgment are incontrovertible here.  This court has only the power to review the law declared by the court below, and when that court is intrusted with both the facts and the law, we must assume the facts to be as that court finds them.  This observation is not made because in the present case the facts in evidence did not justify the assumption of the circuit court in regard to them, for there is, in our opinion, nothing unreasonable in the deductions made by the circuit court from the evidence presented, but because we wish it to be understood that it is not our province to determine facts, or review the finding of juries or courts on them, except in chancery cases."

The memorandum handed down by the court at the time the judgment was ordered and its final decision was made, was not, we think, a declaration of law within the meaning of that term. . It does not purport to be such, nor do we think it was so intended, but was merely an announcement of the conclusion reached in order that the clerk in writing up the judgment might understand it.  It does not attempt to declare the law upon any feature of the case, and is not in either substance or form a declaration of law, as we understand it.  It does not declare anything, and has no proper place in this record, so that, as defendant asked no declaration of law and none was given, except as before stated, the action of the court in refusing that one will now be considered.  That the declaration of law was properly refused is beyond all question.  If it is true as claimed by defendant that plaintiff refused to comply with the terms of the contract in consequence of which the suits were dismissed, though the evidence seems to show otherwise, then defendant's remedy, if he complied with the contract on his part, was for damages for breach of the contract; or upon *quantum meruit,* for whatever his services were reasonably worth.  But in no event under the circumstances 'dis-

Vol 172 mo—39.

closed by the record was the measure of damages one-fourth of the sum that might possibly have been recovered at the end of the suit by Jordan v. Chouteau, the result of which was at most problematical. The declaration of law as asked is vicious for the further reason that if it had been given its practical effect would have been to inject into this suit another entirely different and independent suit, involving both questions of law and of fact, in other words collateral issues to be passed upon by the court sitting as a jury and that, too, without evidence, which we think without precedent and contrary to all rules of law or ethics.

For these intimations the judgment is affirmed.

All of this Division concur.