STATE OF MISSOURI at the relation of JAMES L. CLARK, Trustee of the Estate of MARY M. PARKER and MARY KATHERINE FORTNEY, under the last Will and Testament of ALBERT G. PARKER, Relator, v. HOPKINS B. SHAIN, ROBERT M. REYNOLDS and EWING C. BLAND, Judges of the Kansas City Court of Appeals.—119 S. W. (2d) 971.

Court en Banc, September 28, 1938.*

*NOTE: Opinion filed at May Term, 1938, August 8, 1938, motion for rehearing filed; motion overruled at September Term, September 28, 1938.

*E. M. Jayne* for relator.

*Henry L. Jost, Lester G. Seacat* and *John Campbell* for respondents.

70

ELLISON, J.—Certiorari to the judges of the Kansas City Court of Appeals bringing up the record in State ex rel. Clark v. National Surety Co., 82 S. W. (2d) 616, which includes opinions by SHAIN, P. J., and BLAND, J., and also incorporates a part of a third opinion by REYNOLDS, C., in In re Parker's Trust Estate, 228 Mo. App. 400, 67 S. W. (2d) 115. The facts in detail may be obtained from those cases. We condense them here.

One Charles S. Davis was executor of the estate of Albert G. Parker, deceased, and also trustee of a trust fund of about $3000 created by his will. When Davis made his final settlement of the estate he signed and filed with the probate papers a voucher acknowledging receipt of the trust fund by himself as trustee from himself as executor. But he was in fact insolvent then, or at least when he died eighteen months later. The opinion of SHAIN, P. J., quoting from the opinion of REYNOLDS, J. (then Commissioner), states there was nothing except the voucher to show Davis had transferred the trust fund to himself as trustee, and he never did account for it. His successor trustee sued the National Surety Company, which had bonded Davis in his capacity as trustee, and obtained a judgment on the bond in the circuit court based upon a general finding by the court sitting as a jury. The bond was as follows:

"We, Charles S. Davis, as principal and National Surety Company, as surety, acknowledge ourselves to owe or stand indebted to the State of Missouri in the sum of $6,000.00, upon condition that the said Charles S. Davis has been in the above entitled matter appointed trustee by the aforesaid Circuit Court to receive, take charge of and administer the sum of $3128.39. To pay the income therefrom to Mary M. Parker during her life and at her death to pay said sum and any undistributed earning thereon to Mary Katherine Fortney. Now, if the said Charles S. Davis shall well and faithfully perform said trust, pay over and account for the aforesaid money, then this obligation to be void, otherwise to remain in force."

On appeal, the opinions of the respondent judges reversed outright the judgment of the circuit court on two grounds. The first was that upon a proper construction the surety bond protected only money actually coming into Davis' hands as trustee; and that the aforesaid proof of his execution of the voucher receipting for the trust fund was not prima facie evidence of the actual transference of the money from himself as executor to himself as trustee. Standing alone it was in the nature of mere book entry transferring a naked liability, said the opinion. This being the only evidence on the point, the holding was that there had been a failure of proof on the issue.

The successor trustee, Clark, as relator maintains this ruling violated Sections 15 and 20, Article II, Constitution of Missouri, in

that it impaired the obligation of the bond, and deprives him of his property without due process of law. We cannot see that these constitutional provisions have anything to do with the case. Section 15 prohibits the passage of any *ex post facto* law, or law impairing the obligation of contracts or retrospective in its operation. It has been held the section relates only to the enactment of legislation and not to decisions by courts. [Hilgert v. Barber Asphalt Paving Co., 173 Mo. 319, 329, 72 S. W. 1070, 1072.] The other section cited, Section 20, forbids the taking of private property for private use except upon certain conditions, and has no reference to the construction of contracts. But we shall assume relator meant to refer to Section *30*, Article II of the Constitution, which provides that no person shall be deprived of life, liberty or property without due process of law, and pass on to a more important question.

In thus appealing to the Constitution, relator necessarily must mean that the construction put upon the surety bond by respondents' opinions was erroneous and thereby violated his constitutional rights. But he does not contend their ruling contravened any decision of this court. On the contrary relator maintains vigorously that since Section 8 of the constitutional Amendment of 1884 provides "the Supreme Court shall have superintending control over the courts of appeals by *mandamus*, prohibition and certiorari," it follows that this court has the power by certiorari to keep the Courts of Appeals within proper bounds when their opinions violate the Constitution or a statute, regardless of whether they do or do not contravene a controlling decision of this court. The superintendence exercised in the latter instance, says the relator, really is not referrable to Section 8, Amendment of 1884, but to Section 6 of that amendment, which provides that "the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeals." So he insists he has a right to raise the constitutional question by certiorari, notwithstanding this court has never passed on the question.

We agree with relator that certiorari is the proper remedy to confine an appellate court within the limits of its constitutional and legal authority by quashing its record, State ex rel. Aquamsi Land Co. v. Hostetter, 336 Mo. 391, 398, 79 S. W. (2d) 463, 465; State ex rel. Gilman v. Robertson, 264 Mo. 661, 675, 175 S. W. 610, 612. And we further agree that when a Court of Appeals has exercised jurisdiction not vested in it, or even when it exceeds its jurisdiction by undertaking to exercise unauthorized powers, we may quash its opinion without reference to any question of conflict with our decisions. [State ex rel. Long v. Ellison, 272 Mo. 571, 579, 199 S. W. 984, 986; State ex rel. Scott v. Smith, 176 Mo. 90, 99, 75 S. W. 586, 588.]

But when the Court of Appeals had jurisdiction otherwise to render the particular judgment in the cause we cannot quash its opinion un-

less it contravenes some controlling opinion of this court. If it does the latter, it violates Section 6 of the Amendment of 1884, supra, which requires the Courts of Appeals to follow the last previous rulings of this court, and thereby exceeds its jurisdiction, making certiorari available as a remedy. Beyond that rule we cannot go, for we would be exercising *appellate* jurisdiction over the Courts of Appeals, which the Constitution does not give us. [State ex rel. Third National Bank v. Smith, 107 Mo. 527, 530, 17 S. W. 901, 902.]

■ The Kansas City Court of Appeals did have jurisdiction of the instant cause coming to it on appeal from the circuit court. The action was at law on the trustee's bond for approximately $3,000, and no constitutional or other question which would deprive it of jurisdiction was involved, so far as the record shows. For aught that appears, the respondents ruled the cause on issues tried in the circuit court and tendered on appeal. They construed the bond and held there was no liability under the facts. The constitutional questions were first raised in relator's motion for new trial. And even then relator did not contend, and does not contend now, that respondents had no jurisdiction of the case. Neither does he claim conflict between respondents' opinions and our decisions. All he urges is that respondents' erroneous construction of the bond violates his constitutional rights. In this state of the record we cannot interfere.

Relator's next assignment of conflict is this. It will be remembered the bond was expressed to be "upon condition" that Davis had been appointed trustee to receive, administer and pay out the trust fund as directed in the will, and then continues: "Now, if the said Charles S. Davis shall well and faithfully perform said trust, pay over and account for the aforesaid money, then this obligation to be void, otherwise to remain in force." Relator contends it was as much a part of the trust that Davis should *receive* the money, as that he should properly handle and disburse it after he got it; and that if he in his capacity as trustee did not take charge of the money, especially after receipting for it as trustee and thereby leading the beneficiaries to believe it was in his possession, he was guilty of a breach of the bond to their damage because they could have sued upon his executor's bond if they had known the facts.

The respondent judges ruled against this contention. They declared that part of the first sentence of the bond beginning with the words "upon condition" was mere recital or inducement; that the sole condition of the bond was expressed in the last sentence, beginning with the word "now;" and that liability attached only to money actually coming into Davis' hands. The opinion of BLAND, J., on motion for rehearing said the introductory sentence containing the words "to receive, take charge of and administer" was not broad enough to cover Davis' dereliction in ostensibly assuming possession of the fund when he was not in fact. Relator asserts these rulings

conflict with M., K. & T. Ry. Co. v. American Surety Co., 291 Mo. 92, 102-3, 236 S. W. 657, 660.

The bond in that case does not bear the slightest resemblance to the bond here. The decision simply announced and applied to its particular facts general rules or principles for the construction of bonds executed by sureties for hire. It says the obligations of such a bond are to be construed like the obligations of other contracts; that due consideration must be given to all the language employed therein; that ambiguities are to be resolved against the surety; and that the attendant circumstances may be considered. Evidently, relator's theory is that these general rules of construction were violated by respondents' opinions, and for that reason there is conflict between the two cases.

We have had occasion to go into that question in another case during the present term, State ex rel. Wors v. Hostetter, 343 Mo. 945, 124 S. W. (2d) 1072. It has often been held that where the ruling of a Court of Appeals contravenes a general principle of law announced by this court, we will interfere on certiorari. [State ex rel. Brotherhood of American Yeoman v. Reynolds, 287 Mo. 169, 174, 229 S. W. 1057, 1058(3); State ex rel. Himmelsbach v. Becker, 337 Mo. 341, 343, 85 S. W. (2d) 420(1).] That rule, however, is subject to limitations. When the Court of Appeals expressly declares some general principle of law contrary to a controlling pronouncement of this court on the same principle, we will quash its opinion without regard to the facts. [State ex rel. K. C. So. Ry. Co. v. Shain, 340 Mo. 1195, 1201, 105 S. W. (2d) 915, 918.] The same is true when a statute or contract plainly can have only one meaning under canons of construction established by this court and the Court of Appeals gives it some other meaning; for there the *necessary* effect of such erroneous holding is to violate the rule of construction—as much so as if the rule were expressly denounced.

But such instances are rare. Many things beside the mere letter of a statute or contract may enter into its construction. [State ex rel. American Surety Co. v. Haid, 325 Mo. 949, 959, 30 S. W. (2d) 100, 104.] When the statute or contract is open to construction—when its meaning is debatable—a Court of Appeals has a right to apply established canons of construction to it, and to declare its meaning according to its own views, even though we may not concur in those views, so long as they are not in conflict with holdings of this court based on the same or similar facts, as where we have construed the same statute or a similar contract. [State ex rel. Arndt v. Cox, 327 Mo. 790, 797, 38 S. W. (2d) 1079, 1082; State ex rel. Superior Mineral Co. v. Hostetter, J., 337 Mo. 718, 725, 85 S. W. (2d) 743, 744.] If this were not true, as the Wors case says, we could be asked to review the rulings of the Courts of Appeals on all the written instruments that come before them, for all would hinge

74

on some general rule of construction. [See, also, State ex rel. American Surety Co. v. Haid, supra, 325 Mo. l. c. 960 (IV), 30 S. W. (2d) l. c. 105(8).]

■ We think the surety bond in this case was open to construction. It begins by acknowledging the indebtedness of the signers "upon condition" that David *has been* appointed trustee to receive, take charge of and administer the trust fund, etc. It might as well have incorporated a "whereas" and said that whereas Davis had been appointed trustee to handle and disburse the trust fund, etc. The bond then goes on to say *if he shall* well and faithfully administer the trust, pay over and acount for the fund, the obligation to be void. If some other person had been executor and had failed to turn over the fund to Davis as trustee, it would hardly be claimed he had breached his trustee's bond. There is authority to the effect that when the *same* person is holding a fund in one capacity, such as executor, he cannot by his own election shift responsibility therefor to his sureties in another capacity, such as trustee, merely by signing a receipt as trustee, when there is no actual transference of the fund. [State ex rel. Hospes v. Branch, 151 Mo. 622, 637, 52 S. W. 390, 394.] The respondents evidently sought to follow that doctrine. Relator has not cited any later decision in conflict therewith, or any decision ruling the sureties of a trustee are liable for his fraud in receipting for a fund which actually has not been delivered to him. We find no conflict with our decisions and rule that in the absence of such conflict the opinion of the respondents must stand.

■ The final assignment of conflict complains of the action of the respondents in reversing outright the judgment of the circuit court in the face of the fact that the action was one at law tried to that court sitting as a jury and decided on a general finding for the relator, without declarations of law or instructions asked or given. Relator asserts this was violative of Section 28, Article II of the Constitution in that it denied him the right of trial by jury, which he would have had if the case had been remanded for another trial. He also says respondents' opinion in this regard is in conflict with In re Langford's Estate, 272 Mo. 1, 18, 197 S. W. 147, 152, and Jordan v. Davis, 172 Mo. 599, 608, 72 S. W. 686, 688.

The Langford case holds that the findings of fact of the trial court sitting as a jury in a case at law will have applied to them in an appellate court the same presumptions of verity that attach to the verdict of a jury in a law case. The Jordan case holds that the finding of facts by the court sitting as a jury and the giving of a general verdict are incontrovertible on appeal, unless declarations of law, showing upon what theory the case was tried, were asked and refused. This is true where there is any substantial evidence to support the general finding and verdict. But where there is no substantial evidence the appellate court will intervene and reverse the case. That

is the very theme and holding of the Langford decision. In the instant case the respondents held there was no substantial evidence to support the finding for relator in the circuit court. They arrived at this conclusion, first, by construing the bond and holding it imposed no liability on the sureties except for money actually coming into the hands of the trustee; and they held further that there was no evidence showing the trust fund had come into the hands of the trustee except his own receipt, which, standing alone, was a mere bookkeeping entry and not binding on the sureties.

Relator answers that there was evidence showing at least a part of the trust fund went into the hands of Davis as trustee, because the opinion of BLAND, J., states "It is apparent that Davis, as trustee, turned over to the beneficiaries all of the money that he received in that capacity and, consequently, there was no breach of the bond." Respondents had a right thus to rule if from an examination of the record they so found the facts as a matter of law. It is not the rule that if the trial court sitting as a jury makes a general finding of facts that appellate courts never can overturn it. This is the very thing the Langford case decided was *not* the law, where there is no substantial evidence in the record supporting the finding.

It is true the statement made by Judge BLAND, just quoted, indicates some of the trust fund passed into the hands of the trustee; but he also rules that all money so received was turned over to the beneficiaries. In short, the opinion means that the beneficiaries got all that the trustee ever received. According to the statement of facts in all the opinions considered together whatever other funds may have been in the trust estate were never turned over by Davis as executor to Davis as trustee. This brings the facts within the first ruling of respondents that there was no liability resting on the surety as to funds not transferred. In view of all this there is no conflict between the respondents' opinion and the Langford and Jordan cases. Neither was the ruling in violation of Section 28, Article II of the Constitution.

For the reasons stated our writ of certiorari was improvidently issued and is quashed. All concur, except *Douglas, J.*, not sitting because not a member of the court when cause was submitted.

### ON MOTION FOR REHEARING.

ELLISON, J.—Relator says we failed to understand his argument assigning error on respondents' reversal outright of the judgment of the trial court, and asks us to reread pages 6 to 10 of his reply brief. Relator's position is that since the case was an action at law tried to the court without a jury, and with no declarations of law asked or given, the general finding of the trial court was incontrovertible on appeal and therefore binding on respondents *if there was any substantial evidence to support it,* as is held in Jordan v. Davis,

172 Mo. 599, 608, 72 S. W. 686, 688, and In re Langford's Estate, 272 Mo. 1, 18, 197 S. W. 147, 152, reviewed in our opinion above.

In respondent's opinion, 82 S. W. (2d) 616, it was held by SHAIN, P. J., that there was no substantial evidence showing the trust fund came into the hands of Davis, the trustee. BLAND, J., held it was apparent that Davis, as trustee, turned over to the beneficiaries all the money he received in that capacity, thereby impliedly conceding he did receive at least some part of the trust fund. These holdings are inconsistent with each other, and both are inconsistent with the trial court's finding for the plaintiff successor trustee. Relator contends this shows there was some substantial evidence that Davis did receive a part of the trust fund and stood accountable therefor. And on that assumption he says in his motion for new trial: "If the respondents can say *as a matter of law* that the trustee accounted for all money which came into his hands, then they can say as a matter of law that any fact in issue was proven or not proven, as they may determine."

But we cannot assume there was conflicting evidence on that question. Respondents' opinion on motion for rehearing by BLAND, J., was their last utterance on the question and all of the respondents concurred therein. They held it was apparent that Davis as trustee accounted for all the trust money he received. We are bound by that statement, and indulging the presumption of right action, we must assume there was no substantial evidence to the contrary, notwithstanding the earlier opinion of SHAIN, J., may seem to point to the contrary. We cannot search the record for the facts, and see no reason for altering our opinion heretofore delivered. Our writ of certiorari is ordered quashed.