STATE OF MISSOURI at the relation of THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a Corporation, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and WILLIAM E. KEMP, Judges of the Kansas City Court of Appeals.—126 S. W. (2d) 181.

Division Two, March 15, 1939.

*William C. Michaels, Roy P. Swanson* and *Kenneth E. Midgley* for relator, *Louis W. Dawson* and *Michaels, Blackmar, Newkirk, Eager & Swanson* of counsel.

*McVey & Randolph* for respondents.

BOHLING, C.—Certiorari to review the ruling of the Kansas City Court of Appeals in Hansen v. Mutual Life Insurance Company of New York (relator here), 118 S. W. (2d) 505, an action by the beneficiary of an insurance policy providing for $1,000 ordinary or $2,000 accidental death benefits. Insurer made payment under the ordinary death benefit provisions and this action involves only the accidental death or double indemnity provisions. Insurer's motion for judgment on the pleadings and the opening statement for plaintiff was sustained, which judgment was reversed and the cause remanded by the Court of Appeals.

The contentions of the litigants with respect to double indemnity revolve around Section 1 and the "occupation" clause of Section 13 of the policy. They read, so far as thought material, (italics ours):

Section 1. "The Double Indemnity will be payable upon receipt of due proof that the insured died before the end of the endowment period as a direct result of bodily injury effected solely through external, violent and accidental means, independently and exclusively of all other causes . . .; *provided that the Double Indemnity shall not be payable if death resulted directly or indirectly* from . . . [mentioning such acts as self-destruction, taking poison, etc.] from military or naval service in time of war, or from any act incident to war; . . . or *from* operating or *riding in any kind of aircraft, whether as a passenger or otherwise, except as a fare-paying passenger* in a licensed passenger aircraft . . ."

Section 13. "Occupation—*This policy is free from restrictions as to occupation* except the restrictions as to military or naval service applying to Double Indemnity as provided in Section 1."

Insured's application and policy were dated December 12, 1932, and December 30, 1932, respectively. The application stated and at that time insured was a "trained nurse, employed as an assistant to a physician." Sometime after the issuance of the policy insured changed her occupation to that of " 'stewardess on airplanes,' " which occupation required her to ride in aircraft, and while insured in the performance of her duties as stewardess was riding in an aircraft, but not "as a fare-paying passenger," the plane crashed, resulting in the death of insured.

Reading the policy as a whole, giving effect to that portion of Section 13 reading "this policy is free from restrictions as to occupation," and considering it in connection with the sole exception expressed in said section of "the restriction as to military or naval service applying to double indemnity as provided in Section 1," there being a total absence of any restriction with respect to occupation which required persons engaged therein "to operate or ride in any kind of aircraft;" the Court of Appeals held: ". . . the exclusion provisions of clause 1 [providing "that the double indemnity shall not be payable if death resulted directly or indirectly . . . from . . . riding in any kind of aircraft, whether as a passenger or otherwise, except as a fare-paying passenger . . ."] refer to those who operate or ride in aircraft other than those required to engage therein as a necessary part of the duties of his occupation, or, such duties as must be performed in order that the occupation itself be performed. Otherwise, the clause is a restriction, limitation or restraint as to occupation." (l. c. 507.)

Relator expressly disavows interposing any defense resting on insured's "occupation"; asserts its defense goes solely to the manner and cause of death, disregarding entirely insured's occupation, and

that since insured's death resulted directly or indirectly from riding in an airplane while not a fare-paying passenger, the beneficiary may not recover under the expressed double indemnity provisions of the policy.

Speaking to the quoted policy provisions the Court of Appeals, l. c. 507(1), states: "But we are of opinion that there is no ambiguity."

The opinion, l. c. 508, continues: "Under the terms of the policy if the insured had been a lawyer, doctor or merchant and were fortunate enough to have a free pass and if he were killed while riding in an airplane, not being a fare-paying passenger, etc., although it were customary for the lawyer, doctor or merchant, in connection with his profession or business to travel by airplane, no doubt there could be no recovery." We add: so, too, as respects a "trained nurse, employed as an assistant to a physician." And, after citing and quoting from the Dailey case, ubi infra, continues: "So, in the case at bar, defendant agreed: 'This policy is free from any restrictions as to occupation' and, in effect, agreed that insured was privileged to enter the occupation of airplane stewardess without affecting the accident provisions of the policy . . ."; but held, since insured thereafter became an airplane stewardess and was required to ride in airplanes, "the restriction contained in clause 1, relating to riding in any kind of aircraft, cannot be relied upon by defendant." We are unable to perceive how said accident provisions remained unaffected if insured had met her death from riding in an airplane when not a "fare-paying passenger" while "a trained nurse, employed as an assistant to a physician," her beneficiary could not but after insured became a "stewardess on airplanes" could recover under said provisions.

Dailey v. Preferred Masonic Mut. Acc. Assn., 102 Mich. 289, 298, 57 N. W. 184, 187, 26 L. R. A. 171, 174, the only authority cited in respondents' opinion, was an action on an accident policy for accidental death benefits. Insured was a railroad passenger conductor, it being common knowledge that his duties embraced the boarding and alighting from moving trains. His application fully disclosed his employment; but the policy provided insured "by his acceptance hereof" agrees that hazards arising, among others, from "attempting to enter or leave moving conveyances using steam . . . as a motive power" are not covered. Insured met his death while attempting to alight from a moving railroad train, and defendant interposed the quoted policy provision as a defense. The court held the restriction could not be insisted upon by the insurer. But, what were the facts? In that case the insured met his death before the policy ever reached him. He never saw it. He never had an opportunity to accept or reject it. The only instrument upon which the minds of the insured and insurer could have possibly met was insured's application.

It was "accepted" by insurer prior to insured's death. The excepted risks named in the application did not embrace the risk named in the policy and interposed as a defense. The case pivoted on the application, not the policy. The court said. "As before stated, the contract was complete when the application was accepted and credit given by the secretary for the premium. The insurance which the parties agreed upon is substantially set out in the application, and the insured had no reason to believe from it that there was to be any such restriction as to entering or leaving moving trains as contained in this policy. He was entitled to have a policy issued to him in conformity to the application. . . ." The issue there involved is not the issue here.

Respondents' brief cites Brown v. Railway Passenger Assurance Co. (Banc), 45 Mo. 221. In that case the insured, a locomotive engineer, purchased "a general accident, as contradistinguished from a mere passenger or traveling, ticket," paying therefor a higher premium, insuring against death " 'caused by an accident while traveling by public or private conveyance provided for the transportation of passengers. . . .' " The sole expressed exemption from the coverage was war risks. Insured was killed while performing his duties as railroad engineer. The court sustained defendant's contention "that a locomotive or engine is not a conveyance provided for the transportation of passengers"; but held: ". . . this ticket was designed to include and cover something more than the ordinary risk incurred by the passenger or traveler. The locomotive is a necessary part of the conveyance." [l. c. 225.] "As Brown was not insured as a passenger and traveler, but against all accidents, without regard to the capacity in which he was acting, the reasonable inference is that the ticket was intended to cover the risk and accident by which he met his death." [l. c. 226.] This ruled the case; but, considering defendant's agent's knowledge of insured's occupation and the unquestioned conclusion that insured believed he was insured while pursuing his occupation (l. c. 225), the court also stated (l. c. 226): "If it be conceded that the meaning of the ticket is doubtful or ambiguous, still the question must be decided for the plaintiff, as the promisor would not fail to apprehend that the promisee labored under the impression that he was indemnified, and where such is the case, the construction must be most favorable to the insured." [l. c. 226.] The portion of that opinion pertinent here is the dictum, under the facts there presented, reading (l. c. 225): ". . . if the ticket applies solely and exclusively to passengers or travelers, the position that the company is not liable cannot be controverted. A passenger would have no right to go upon an engine . . . [and, if so], he would not be protected."

Some authorities citing the Dailey and Brown cases have expanded their rulings.

█ We are concerned with a conflict in rulings. Respondents, asserting the ruling is correct, contend that the precise issue presented has never been passed on here and error, if any, may not be reached on certiorari. We have said, on certiorari reviewing rulings of the Courts of Appeals: ''The plain language of this policy and slip is without ambiguity, and there is no room for construction. In construing it contrary to that meaning, the Court of Appeals brought its decision into conflict with decisions of this court. Unequivocal language is to be given its plain meaning, though found in an insurance contract.'' [State ex rel. v. Trimble (Banc), 306 Mo. 295, 309, 267 S. W. 876, 880(2). To the same effect are State ex rel. v. Allen, 337 Mo. 525, 532(2), 85 S. W. (2d) 469, 470(3) ; State ex rel. v. Trimble, 334 Mo. 920, 925, 68 S. W. (2d) 685, 687(1) ; State ex rel. v. Cox, 322 Mo. 38, 43, 14 S. W. (2d) 600, 602(1, 2) ; State ex rel. v. Hostetter, 341, Mo. 488, 493(4), 108 S. W. (2d) 17, 19(5). See, also, State ex rel. v. Shain, (Banc), 340 Mo. 1195, 1201(1), 105 S. W. (2d) 915, 918(2, 3).] State ex rel. Clark v. Shain (Banc), 343 Mo. 66, 119 S. W. (2d) 971, 974(6, 7), stressed by respondents, recognizes these authorities: ''The same is true [i. e., the record will be quashed] when a statute or contract plainly can have only one meaning under canons of construction established by this court and the Court of Appeals gives it some other meaning; for there the necessary effect of such erroneous holding is to violate the rule of construction—as much so as if the rule were expressly denounced.''

Prange v. International Life Ins. Co., 329 Mo. 651, 661, 46 S. W. (2d) 523, 526, 80 A. L. R. 950, 957, states: ''Courts are without authority to rewrite contracts, even insurance contracts . . .; they discharge their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract they have themselves made. [Citing cases.] . . .''

Wendorf v. Missouri State Life Ins. Co., 318 Mo. 363, 370, 1 S. W. (2d) 99, 101(4, 7), 57 A. L. R. 615, 619, states: ''The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but in so far as open to different constructions, that most favorable to the insured must be adopted. . . . [Citing cases.] However, as said in 14 R. C. L., sec. 103, p. 931, the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. . . .' '' Also, ''But the rule of strict construction [applied to restrictive provisions of an insurance policy] does not prevent the application, within proper limits, of the further principle 'that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties.' ''

The Wendorf case, supra, was an action under an accident policy for death benefits, and the issue respecting liability turned on a clause

reading: "The insurance hereunder shall not cover injuries fatal or nonfatal . . . sustained by the insured . . . while in or on any vehicle or mechanical device for aerial navagation, or in falling therefrom or therewith or while operating or handling any such vehicle or device." That case held said clause ". . . not a forfeiture provision. . . . The clause rather states an excepted risk." 318 Mo. l. c. 370, 1 S. W. (2d) l. c. 102(6). And: "Obviously, the general purpose of the clause was to exempt the insurer from liability for accidents occurring in aeronautics because of the extraordinary hazards incident thereto. . . ." Ibid, 371(II) and 102(8). Consult Greenleaf v. St. Louis Ins. Co., 37 Mo. 25, 30.

In State ex rel. Mutual Benefit H. & A. Assn. v. Trimble, 334 Mo. 920, 925(2); 68 S. W. (2d) 685, 686(5), it was held that provisions of a health and accident policy to the effect insurer would pay a stipulated sum if insured, by reason of sickness, be continuously confined within doors and require regular visits by a physician, or a stipulated sum if insured be totally disabled although not confined within doors and not requiring regular medical attention, and a provision that the policy did not cover disability while insured was not under the professional care and regular attendance at least once a week, beginning with the first treatment, of a licensed physician or surgeon were not ambiguous or conflicting but had a plain meaning; and the record of the Court of Appeals that insurer could not defend under the latter provision was quashed.

The language here is: "riding in any kind of aircraft, whether as a passenger or otherwise, except as a fare-paying passenger in. . . ." If, as held in the Wendorf case, "while in or on any vehicle . . . for aerial navagation" states an excepted risk, "riding in any kind of aircraft" also states an excepted risk; a certain act or event which suspends liability for double indemnity. The phrase "whether as a passenger or otherwise" is unlimited in scope; but this broad exemption from liability is itself immediately restricted to permit coverage of "a fare-paying passenger." Considering the proviso as a whole and the language directly involved, the noncoverage of persons riding in aircraft while not fare-paying passengers is twice manifested—first, by explicit exclusion and, second, by implication through omission to include them in the expressed restriction to the exclusion clause. Insured was not a fare-paying passenger and her death was the result of an act or event which, during its pendency, suspended liability for double indemnity under the stated facts without regard to her occupation.

It follows that the opinion of the Court of Appeals and the record made pursuant thereto should be quashed. It is so ordered. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.