BESSIE LIEDERMAN v. INDEPENDENT ORDER OF BRITH SHOLOM, a FRATERNAL BENEFIT SOCIETY, and AETNA CASUALTY & SURETY COMPANY, a Corporation, Surety, Appellants.—No. 38444.— 173 S. W. (2d) 848.

Division Two, July 6, 1943.

Rehearing Denied, September 7, 1943.

*Everett Paul Griffin* for appellants:

*Max·Sigoloff* for respondent.

BOHLING, C.—This is an action at law seeking $500 alleged-ly due on an insurance policy issued upon the life of Sam Liederman instituted in the justice of the peace court by Bessie Liederman, widow and beneficiary, against the Independent Order of Brith Sholom, a fraternal benefit society. The defendant appealed from an adverse judgment to the circuit court where, upon trial anew, judgment was rendered against defendant and its surety on the appeal bond (Sec. 2748, R. S. 1939). Defendant and the surety appealed and the case reaches us upon certification from the Court of Appeals. Provisions of the policy and insured's application are quoted in the opinions of the Court of Appeals and need not be requoted in every instance here. See 164 S. W. (2d) 614.

Sam Liederman became a member of defendant fraternal order April 6, 1911. He was suspended May 14, 1935, for nonpayment of dues. He never sought reinstatement. He died July 14, 1937, while under suspension. The controversy is over extended insurance; plaintiff contending death occurred within the period covered by the policy and defendant contending, in the circumstances, there was no extended insurance.

Under the 1911 "membership certificate or policy," as well as under the 1924 policy (mentioned infra), insured was a member of the "Concession or Inadequate Class" of insurer. On April 1, 1924, insurer issued and insured accepted insurer's policy No. 30022 in lieu of the policy of 1911, an expressed agreement being that all previous policies issued on the life of said insured were "null and void." This certificate called for a monthly premium of $1.04 which, according to the testimony, was increased ten cents. On November 28, 1933, insured made written application to transfer from the Concession or Inadequate Class to the Adequate Rate Class and to exchange certificate No. 30022 for a new whole life policy, stating in said application, in part, as follows:

"Amount $500. Effective date: 1/1/34.

"Terms, of Exchange Proposal Accepted by Member.

"Payments on new certificate (policy) are to begin with the month of 1/1 1934.

"The date to be given the new certificate (policy) is 1/1 1929.

"The attained age of the member is 53. The age at which the member is to be rated on the new certificate (policy) is 48.

"Payments on the new certificate (policy) will be made on a monthly basis. The full monthly rate is $1.53 . . . . .

"In consideration of the issuance of the certificate (policy) herein applied for, I hereby surrender my present Benefit Certificate (policy) described above [policy No. 30022], to Brith Sholom, for cancellation and I hereby, for myself and beneficiaries, and for anyone claiming any right in, through or on account of said certificate (policy), release said Brith Sholom from any and all liability thereunder. . . .

"It is understood and agreed that the equitable values and nonforfeiture provisions of the new certificate (policy) will not be available to me until after I have made payments on said new certificate (policy) for three full years from the effective date thereof."

New policy No. T 2196 was issued pursuant to insured's said application. Said policy recited that it was issued in consideration of the insured's original application for membership under policy No. 30022, the application for the exchange of policy No. 30022 for policy No. T 2196, insuring insured for $500 under the whole life plan, premium $1.53 monthly, attained age of insured 53, et cetera. It concluded:

"In witness whereof, the Brith Sholom has affixed its seal and caused this certificate to be signed by its Grand Master and attested and recorded by its Grand Secretary at the City of Philadelphia, State of Pennsylvania, this 1st day of January, 1934, as of the back dated age of 48 as of the 1st day of January, 1929."

The policy also contained the following:

"Non-Forfeiture—When all payments required under this certificate shall have been duly made for a period of three years or more from the actual date of issue hereof, and dating back by reason of accumulated credits not being taken into consideration in the calculation of said period and before the default thereafter occurs in any payment when due, the member shall be entitled to any one of the following options: (a), or (b), as shown respectively in the Table of Withdrawal Equities included herewith said option to [850] be exercised within thirty days after such default:

"(a) To surrender this certificate for Paid-up Insurance, payable at the same time and under the same conditions that this certificate would have become payable if continued in force; or

"(b) to have the insurance hereunder continued as term insurance for its Face Amount . . . ."

One of the omitted clauses provided for option "(b)" to apply automatically when, as here, insured failed to exercise his option.

Section 8 and section 9 of Law I of the by-laws of the insurer conformed to the foregoing non-forfeiture provisions of the policy. They need not be set out.

A failure to pay any premium when due or within the grace period (thirty days) was to cause the policy to "cease to be in force" except as provided in the non-forfeiture provisions.

The "extended insurance" provided for under "Table of Withdrawal Equities" did not provide for any "withdrawal equities" prior to the end of the third policy year; and after "5 years" provided for 4 years and 233 days extended insurance, and after "6 years" provided for 5 years and 288 days extended insurance.

The foregoing are the material provisions of the contract of insurance before us. It is not for us to rewrite insurance policies. Plain and unambiguous language leaves no room for judicial construction of an insurance contract. We discharge our full duty when we ascertain and give effect to the plain intent of the parties as expressed in the contract. Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 370, 1 S. W. (2d) 99, 101[4, 7], 57 A. L. R. 615; State ex rel. v. Shain, 344 Mo. 276, 282[1], 126 S. W. (2d) 181, 183[1].

Something is said in the beneficiary's brief about insured being entitled to nine years' extended insurance under policy No. 30022 at the time of its cancellation on January 1, 1934, and the fact that such nine years would not expire until after insured's death. Plaintiff cannot avail herself of the provisions of policy No. 30022. This is an action at law, originating in the justice of the peace court by a statement declaring on policy No. T 2196, issued January 1, 1934. Insured, by the terms of his application (which expressly constituted a part of policy No. T 2196) for exchange of policies, surrendered policy No. 30022 for cancellation and released defendant for himself, his beneficiaries, and any one claiming under policy No. 30022 "from any and all liability thereunder." The provisions of policies Nos. 30022 and T 2196 are not identical. Policy T 2196, for instance, carried total and permanent disability benefits not found in policy No. 30022. Policy No. 30022 was issued on a rate basis for 45 years. It was discovered that insured's age was 43 on said policy date. Policy T 2196 provided that if an insured's age be misstated, the benefit should be such as the premium would have purchased at the insured's correct age. Insured evidently preferred not to continue payment of the excess premium. Rating insured as of the age of 48, as was done, when he was 53, gave him insurance at a lower premium than if policy T 2196 had been issued at his true age. These, and possibly other factors, afforded a consideration for insured's surrender of rights under policy No. 30022.

The policy was signed, sealed, attested and recorded "this 1st day of January, 1934, as of the back dated age of 48 as of the 1st day of January, 1929." Among the reasons for back dating policy T 2196 was the adjustment of the error in insured's age, giving insured a rate base of 48 years; and to adjust certain accumulated credits. Repeating the policy non-forfeiture provision: "When all payments required under this certificate shall have been duly made for a period of three years or more from the actual date of issue hereof, and dating back by reason of accumulated credits not being taken into consideration in the calculation of said period and before the default thereafter occurs in any payment when due, the member shall be entitled . . . ." The *actual* date of issue is January 1, 1934; the *dated back* date of issue, the *fictitious* date of issue is January 1, 1929. Courts may not properly delete from the clause "and dating back by reason of accumulated credits not being taken into consideration in the calculation of said period" the words "not being taken into consideration." "Said period" refers to "a period of three years or more from the actual date of issue hereof," during which all payments shall have been duly made. The "dating back" refers, from the other provisions of the policy, to "as of the back dated age of 48 as of the 1st day of January, 1929," which the non-forfeiture [851] provision states is not to be "taken into consideration" for, one thing, the ascertainment of extended insurance. "As of" the given date was not the "actual" date. Returning to insured's application, a part of the policy. It plainly stated the effective date of the new policy was to be January 1, 1934; that payments thereon "are to begin" January 1, 1934, and that insured "understood and agreed that the equitable values and non-forfeiture provisions of the new certificate (policy) will not be available to me until after I have made payments on said new certificate (policy) for three full years from the effective date thereof." All this was in plain and unambiguous language. Insured understood, in fact agreed "that the equitable values and non-forfeiture provisions" of policy No. T 2196, here sued on, were explicitly excepted from the dating back to January 1, 1929, provision.

Plaintiff's cases are sufficiently distinguished in the dissenting opinion of the court of appeals (164 S. W. (2d) 621). What is there said need not be repeated.

The judgment is reversed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.