In the Matter of the Accounting of ROBERT E. BERGMAN, as Guardian of GEORGE R. BUNTING, an Infant.

EMMA J. BERGMAN, as Administratrix of the Estate of ROBERT E. BERGMAN, Deceased, et al., Appellants; GEORGE R. BUNTING, Respondent.

In the Matter of the Accounting of ROBERT E. BERGMAN, as Executor of KATHERINE L. BUNTING, Deceased.

EMMA J. BERGMAN, as Administratrix of the Estate of ROBERT E. BERGMAN, Deceased, Appellant; GEORGE R. BUNTING, Respondent.

In the Matter of the Accounting of ROBERT E. BERGMAN, as Trustee under the Will of HARRY F. L. BUNTING, Deceased.

EMMA J. BERGMAN, as Administratrix of the Estate of ROBERT E. BERGMAN, Deceased, Appellant; GEORGE R. BUNTING, Respondent.

Argued May 28, 1942; decided July 29, 1942.

*Hartwell Cabell* and *William Richards* for Maryland Casualty Company, appellant. The decision of the Appellate Division in holding Bergman liable as guardian for moneys which he failed to account for as trustee under the wills of the uncle and grandmother is erroneous. (*Matter of Noll*, 10 App. Div. 356; *Matter of Fardette* v. *U. S. Fed. & Guar. Co.*, 86 App. Div. 50; *Power*

v. *Speckman*, 126 N. Y. 354; *Potter* v. *Ogden*, 136 N. Y. 384; *Hinckley* v. *Probate Judge*, 45 Mich. 343; *Livermore* v. *Bemis*, 2 Allen [Mass.], 394; *Swope* v. *Chambers*, 2 Grat. [Va.] 319.) Where the rights of third parties such as sureties are concerned, the burden is on the objectant to show some act or election on the part of an executor or trustee to hold the property in a different capacity from that in which it was received. (*Pratt* v. *Northam*, 5 Mason, 95; *Burton* v. *Tunnell*, 4 Harrington [Del.], 424; *Johnson* v. *Fuquay*, 1 Dana [Ky.], 514.)

*Vincent J. La Gamma* for Emma J. Bergman, as administratrix, appellant. Section 112 of the Surrogate's Court Act does not apply where the duty to pay and the right to receive are not united in the same person. (*Matter of Wentworth*, 230 N. Y. 176; *Johnson* v. *Ayres*, 18 App. Div. 495; *Power* v. *Speckman*, 126 N. Y. 354; *Matter of Noll*, 10 App. Div. 356; 154 N. Y. 765; *Matter of Brintnall*, 40 Misc. Rep. 67; *Matter of Fardette*, 86 App. Div. 50.) If compound interest should be allowed it should not go beyond the day on which Bergman was removed as guardian. For the subsequent period simple interest only is chargeable. (*Cruce* v. *Cruce*, 81 Mo. 676; *Clay* v. *Clay*, 33 Metcalf [Ky.], 548; *Tanner* v. *Skinner*, 11 Bush. [Ky.] 120; *Armstrong* v. *Walkup*, 12 Gratt. [Va.] 608; *Payne* v. *King*, 38 Mo. 502; *Micou* v. *Lamar*, 7 Fed. Rep. 180.)

*Hugo Wintner, Robert J. Fox, John G. Markey* and *Walter A. Donnelly* for respondent. The decision of the Appellate Division that the general guardian's account should be charged with all moneys to which the infant is entitled from the three estates is justified by the law and facts and is an equitable disposition under which justice to the infant was done. (*White* v. *Rankin*, 18 App. Div. 293; 162 N. Y. 622; *Belden* v. *Belden*, 139 App. Div. 437; *Warren* v. *Union Bank of Rochester*, 157 N. Y. 259; *Harbeck* v. *Pupin*, 123 N. Y. 115; *Matter of Noll*, 10 App. Div. 356; 154 N. Y. 765; *Warren* v. *Union Bank*, 157 N. Y. 279; *Howell* v. *Mills*, 53 N. Y. 322; *Matter of Niles*, 113 N. Y. 547; *Wilmerding* v. *McKesson*, 103 N. Y. 329; *National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733; 230 N. Y. 545; *Matter of Auditore*, 249 N. Y. 335.)

The Appellate Division properly held that compound interest must be charged on moneys which were undeposited, converted and retained for Bergman's use. (*Matter of Grube*, 160 Misc. Rep. 718; *Schieffelin* v. *Stewart*, 1 Johns. Ch. 620; *Cook* v. *Lowry*, 95 N. Y. 103; *Matter of Kernochan*, 104 N. Y. 618; *Walker* v. *Walker*, 76 U. S. 743; *King* v. *Talbot*, 40 N. Y. 76; *Matter of Pruyne*, 68 App. Div. 584; *Hook* v. *Payne*, 81 U. S. 252; *Gould* v. *Gould*, 126 Misc. Rep. 54.)

LOUGHRAN, J.  We have here before us three various accounts by a multiform fiduciary respecting his handling of the separate estates of five members of one family.

The first apposite fact is the birth of George Robert Bunting in 1917.  It will be convenient to call him the infant.  His father, his mother and one of his uncles died in that order during the month of October, 1918.  The father left a will which divided his estate between the infant and the mother.  The mother died intestate leaving the infant as her sole distributee.  The uncle left a will which divided his estate into three parts: one part was given to the infant's father who had predeceased the uncle; another part was to be held in trust for the infant during his minority and was to be turned over to him on his coming of age; with the third part we have no concern.

One Bergman was executor of the father's will, administrator of the mother's estate, executor of the uncle's will and trustee under the trust thereby created for the infant.  In December, 1918, this same Bergman was appointed guardian of the property of the infant.  The paternal grandmother of the infant died in 1929.  Her will named the self-same Bergman as her executor. He was thereby directed to hold her residuary estate in trust for the infant until he reached his majority and to make delivery thereof to him at that time.

After the infant became twenty-one in 1938 he filed objections (1) to the account of Bergman as trustee under the will of the uncle; (2) to the account of Bergman as trustee under the will of the grandmother; (3) to the account of Bergman as guardian. The three resulting accounting proceedings were consolidated by the Surrogate for purposes of trial.  Each proceeding was determined, however, by a separate decree.  (1) As trustee under the

will of the uncle, Bergman was surcharged with $10,001.37; (2) as trustee under the will of the grandmother he was surcharged with $4,889.32; (3) as guardian he was surcharged with $8,576.65.

These decrees were reviewed on cross-appeals taken by the respective parties in interest. Disagreeing with the Surrogate, the Appellate Division said: " It is unnecessary to lay one's finger on the particular estates which this infant was entitled to for the purpose of surcharging Bergman as general guardian with the different funds which should have been turned over to the infant when he became of age. All the money that he received in his different capacities in these estates belonged to the infant and eventually should have been charged to his account as general guardian. While it is true that the corpus of the trust which the uncle, Harry F. L. Bunting, set up and also the corpus of the trust provided for by the grandmother, Katherine L. Bunting, were not to be turned over to the infant until he became of age, still the fact remains that the corpus in each estate was depleted and the moneys stolen therefrom by the accountant during the minority of the infant." (261 App. Div. 32, 35, 36.) This meant that the surcharge against Bergman as trustee under the will of the uncle and the surcharge against him as trustee under the will of the grandmother were to be added to the surcharge against him as guardian of the property of the infant. The Appellate Division also held that Bergman should be further surcharged with compound interest on so much of the respective estates as he had converted to his own use.

On remission of the case to the Surrogate the decrees were accordingly recast with the result that the surcharge against Bergman as guardian rose from $8,576.65 to $48,403.17. Cross-appeals to the Appellate Division followed once more. This time the base of the compound interest item was enlarged, but in all other respects the revised decrees were affirmed. (263 App. Div. 976.) As calculated by the Appellate Division, the total surcharge is $48,886.32.

The form in which the case has now come here requires us to deal first with a question in respect of our jurisdiction.

By his will the uncle directed that Bergman might serve as executor-trustee without being bonded. The will of the grandmother contained a like direction. Consequently there was no

underwriting of any fiduciary responsibility committed to Bergman by either of those wills. On Bergman's appointment as guardian in 1918 Maryland Casualty Company became surety for him in that capacity through two bonds for an aggregate sum of $60,100. As such surety, that company has appealed to this court from the last final decree made by the Surrogate in the proceeding for judicial settlement of the account of Bergman as guardian. An appeal of that type does not lie. (*Matter of Westberg*, 279 N. Y. 316.) The notice of appeal specifies, however, the intent of the appellant to bring up for review both orders of modification made by the Appellate Division. An appeal from the second of these orders could have been taken as of right within sixty days after service upon the appellant's attorney of a copy thereof with written notice of entry. The appeal of Maryland Casualty Company was taken within that sixty-day period. We treat the second order of the Appellate Division as the order appealed from and go on to the merits.

The applicable statute is section 112 of the Surrogate's Court Act. It is thereby provided: " A person to whom letters are issued is liable for money or other personal property *of the estate* which was in his hands, or under his control, when his letters were issued, in whatever capacity it was received by him, or came under his control. Where it was received by him, or came under his control, by virtue of letters previously issued to him in the same or another capacity, an action to recover the money, or damages for failure to deliver the property, may be maintained upon both official bonds; but, as between the sureties upon the official bond given upon the issue of the prior letters, and those upon the official bond given upon the issue of the subsequent letters, the latter are liable over to the former." (The emphasis is ours.)

As executor of the father and as administrator of the mother Bergman was in duty bound to bring about transfers of the assets to himself as guardian. Hence those assets were money or other personal property of the guardianship estate in his hands or under his control when his letters of guardianship were issued. Hence he was here chargeable as guardian with the shortage in the estate of the father (including the one-third part of the estate of the uncle that went through the father to the infant) and with the shortage in the estate of the mother.

As regards the fund held by Bergman as trustee of the uncle and the fund held by him as trustee of the grandmother, the situation is fundamentally different. If it had ever been intended that the infant should somehow become entitled to either of those funds during his minority there would possibly be ground for a presumption that Bergman had brought about a transfer thereof to the guardianship estate. But Bergman was at no time to have any right to forward either of those funds. On the contrary, his plain duty in that aspect was always to be the holding of either fund until the infant became of age. This was the explicit requirement of the uncle, whose will said Bergman need not be bonded. This was the explicit requirement of the grandmother, whose will said Bergman need not be bonded. Bergman was removed as guardian in 1936. The infant did not reach his majority until 1938. These facts confine us to the conclusion that neither of the funds that were so to have been kept by Bergman as trustee was chargeable to him as guardian.

*Matter of Noll* (10 App. Div. 356; 154 N. Y. 765) was cited by the Appellate Division. The considerations which shaped that decision are absent here. At the time of his appointment as guardian, Noll was administrator of the estate of the father of his wards. On his final accounting as such administrator, "the amount * * *. to which his wards were respectively entitled was adjudged, and he was directed to hold it in his relation as guardian." As contestants on his final accounting as guardian, his sureties objected that " before his appointment as guardian Noll had misappropriated and converted to his own use the funds and, therefore, he, as guardian, received none from himself as administrator." The objections were summarily overruled by the Surrogate, who was affirmed for reasons stated in this manner: " It may be assumed that if the administrator and the guardian had been different persons the objections of the contestants would not have been summarily overruled. But where the obligation as administrator to pay, and the right and duty to receive as guardian are united in the same person, as in the present case, he becomes charged in the latter capacity. This was the situation that arose when the Surrogate's decree [on the administrator's accounting] was perfected. And it is no objection available to the sureties on his

official bond as guardian, for them to allege that prior to that time or to the time of his appointment as guardian he had misappropriated and converted to his own use the fund which came to him as administrator, and to which his wards were entitled. As he had received such fund and had not disposed of it in the administration of the estate, he, in legal contemplation, had it in his custody at the time the decree was made. And, for the purpose of the effectiveness of the obligation assumed by the sureties in his official bond as guardian, his liability to account for it conclusively charges him with having the requisite fund." (10 App. Div. 358, 359, 360.) The *Noll* case thus stands for this proposition: Where on settlement of the final account of an administrator, he is directed to make payments to himself as guardian, he is chargeable therewith as guardian, despite the fact that he had theretofore misappropriated the funds he was so ordered to pay. (Cf. *Rouse* v. *Payne*, 120 App. Div. 667; 15 Amer. & Eng. Encyc. of Law, [2d ed.] 94; 111 A. L. R. 303; *Matter of Van Bokkelen*, 285 N. Y. 189.)

Bergman died in 1939. His administratrix has inexactly appealed to this court from both modifications by the Appellate Division of each of the three decrees of the Surrogate. We think she is right in her contention that Bergman should not be surcharged, as guardian, with compound interest for any period after his guardianship was terminated by his removal therefrom in 1936. None of her other contentions calls for any addition to what we have said above.

The orders of the Appellate Division should be reversed and the decrees of the Surrogate's Court modified in accordance with this opinion and the matter remitted to the Surrogate's Court for further proceedings not inconsistent with this opinion, without costs.

LEHMAN, Ch. J., FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.