HOWARD, ADMINISTRATOR *v*. ARKANSAS NATIONAL BANK OF HOT SPRINGS, TRUSTEE.

4-8593                                     214 S. W. 2d 914

Opinion delivered November 1, 1948.
Rehearing denied December 13, 1948.

·   *S. Hubert Mayes* and *Edward L. Wright,* for appellant.

*Wootton, Land & Matthews,* for appellee.

MINOR W. MILLWEE, Justice.   This cause was tried on five separate stipulations which reflect the following facts:   Mrs. Delia Joyce Preston was a resident of Hot Springs, Garland county, Arkansas, at the time of her death, testate, on September 8, 1934.   She was survived by her husband, Dr. H. H. Preston, and their three minor daughters.   Under the terms of Mrs. Preston's will her husband was appointed executor and trustee of the will and guardian of their minor children.   After devising two· parcels of real estate to her husband in fee, the balance of her estate was·given to her husband in trust for the use and benefit of their children.

The will conferred full authority on Dr. Preston as executor and trustee to manage, control and dispose of any, of the properties as the interest of the trust required, with the direction that the estate should be con-

served as far as possible for the maintenance and education of their children. It was also directed in the will that the "trustee and guardian" should equally divide the personal property so that one-fourth of the portion belonging to each child should be delivered to it upon arriving of age and the remaining portion belonging to each child should be delivered to it free from the trust when said child became 23 years of age.

On September 14, 1934, Dr. Preston qualified as executor under the will and filed a bond in the sum of $5,000 although the will provided that he should not be required to give bond either as executor, trustee, or guardian. On the same date Dr. Preston was appointed, and qualified, as guardian of the persons and estates of the three children and filed bond in that capacity in the sum of $20,000. Appellant, Maryland Casualty Company became surety on both bonds. It appears that the guardian's bond was required by a life insurance company before it would release the proceeds of policies on Mrs. Preston's life payable to the three children as joint beneficiaries, in compliance with the requirements of § 6244 of Pope's Digest. This insurance fund was independent of the assets of Mrs. Preston's estate and full account thereof was made by the guardian.

Inventories were subsequently filed by Dr. Preston, as executor, listing personal property belonging to his wife's estate in excess of $20,000 and twelve parcels of real estate situated in and near the city of Hot Springs. The bank account of Dr. Preston, as guardian, provided for joint control and all checks drawn on the account were required to be co-signed by the local agent of the casualty company while his account as executor was not required to be subject to joint control of the surety.

On August 12, 1939, Dr. Preston, as executor, filed his "Account Current and Final Settlement". In this account, which was prepared by a local agent of the Maryland Casualty Company, the executor charged himself with assets and income in the amount of $21,854.93 and credited himself with a like amount of expenditures, showing no balance due the estate. There were no excep-

tions to this final account which was approved by the probate court on January 25, 1940, and the executor and his surety were ordered discharged from further.liability. The account was fraudulently rendered in that credit was obtained for expenditures in the form of receipts and checks which did not represent lawful disbursements of estate funds. No claims of any kind were ever presented, filed or allowed against the estate of Mrs. Preston.

Dr. Preston married Yvonne Preston in June, 1936, and lived with her at Hot Springs until his death intestate on December 12, 1940. Appellant, Earl Howard, subsequently qualified as administrator of his estate. On January 22, 1941, appellee, Arkansas National Bank of Hot Springs, qualified as curator of the estates of the three minor children and was also appointed substituted trustee under the will of Mrs. Preston.

On November 10, 1943, appellee, Arkansas National Bank, as substituted trustee, filed suit against appellants, Earl Howard, administrator of the estate of Dr. Preston, and Maryland Casualty Company as surety on the executor's bond to recover for improper credits taken by Dr. Preston as executor. The complaint, as later amended, prayed that the account of Dr. Preston be surcharged in the sum of $20,457.38. On December 14, 1943, appellee bank, as curator of the estates of the three children, intervened in the action and also prayed judgment for the minors in the sum of $21,854.43.

On March 20, 1945, the bank, both as trustee in succession and as curator, filed an "Amendment to Complaint and Intervention" in the suit. It alleged that it became the duty of Dr. Preston as guardian to exercise supervisory control over the management of the estate of said minors; that he owed to his wards a duty that their estates would not be dissipated or unlawfully used; that notwithstanding said duty, Dr. Preston knowingly suffered and permitted the minors' estate to be dissipated and by reason thereof the estate of said minors had been damaged in the sum of $21,854.43; that Dr. Preston, as guardian, knowingly permitted the executor to claim unauthorized credits in his account and thereby

perpetrated a fraud on the assets of said minors; that appellant, Maryland Casualty Company, knew, or in the exercise of ordinary care should have known, that Dr. Preston, as guardian and curator of the estate of the minors, was not properly exercising supervisory control over the assets of his wards and was actively participating in the dissipation of said assets; that said surety also knew, or should have known, that Dr. Preston was failing in his obligations as guardian and curator to the damage of said minors in the amount of the assets so dissipated.

It was further alleged that the approval of the final account of Dr. Preston, as executor, was obtained by fraud practiced on the court. The prayer of the pleading was that the final account be vacated; that the bank have judgment against the estate of Dr. Preston and the Maryland Casualty Company for $5,000 on the executor's bond and for $20,000 on the guardian's bond.

The answer of appellants, Maryland Casualty Co. and Earl Howard, administrator of Dr. Preston's estate, denied the material allegations of the pleadings of appellees and specifically pleaded that the casualty company as surety on the guardian's bond would only be liable for such assets as came into the possession of Dr. Preston, as guardian.

The trial court entered a decree in favor of the bank as substituted trustee against appellant, Maryland Casualty Company, as surety on the executor's bond in the sum of $5,000. The decree further provided that the bank, both as trustee and as curator, should have judgment against the Maryland Casualty Company as surety on the guardian's bond in the sum of $20,000 and against the administrator of Dr. Preston's estate for $20,457.35. The decree recites: "The Court further finds that Harry Hansell Preston, as guardian and curator of the estates of the said minors, failed to perform his duties as guardian and curator in the manner provided by law for guardians and curators and with full knowledge that said monies were being appropriated by the executor for his own personal use, failed to protect the interest of his

wards and failed to perform the duties incumbent upon him as guardian and curator for the protection of their said estate and thereby failed to perform the duties entrusted upon him by law and became liable to the estate of Delia Joyce Preston for the full amount of the loss sustained by his failure to perform the said duties of guardian and curator according to law . . .'' The court also found that Dr. Preston illegally and fraudulently obtained credit for $20,457.35 in his report to the probate court as executor and the order approving the final account was vacated and the executor's account was surcharged in said amount.

Maryland Casualty Company has appealed from that portion of the decree which awards judgment against it as surety on the guardian's bond. The administrator of Dr. Preston's estate has also appealed from that part of the decree rendering judgment against the estate arising out of the guardianship. The judgment against the casualty company for $5,000 as surety on the executor's bond is not contested.

For reversal of the decree it is earnestly insisted by appellants that Dr. Preston, as guardian, had no right to possess or administer assets of the estate of his deceased wife prior to his death in 1940; and that the surety on his guardian's bond is, therefore, not liable for loss of funds which were never in his hands as such guardian. Appellants rely heavily on the case of *In Re* Bunting's Estate, 288 N. Y. 388, 43 N. E. 2d 455, where the New York court held that a surety on a guardian's bond is not liable for the fiduciary's defalcations where it never became his duty, during the time he acted as guardian, to transfer to himself as guardian assets held by him as trustee. The case supports appellants' contention, but it involves the application of a New York statute and the construction of a condition in a bond different from that involved here. The holding of the New York court was based on the application of § 112 of the Surrogate's Court Act which limited the liability of the guardian to ''money or other personal property of the estate which was in his hands, or under his control, when his letters were is-

sued . . . ." The condition of the guardian's bond there involved was the rendition of "a just and true account of all money and other property received by him and the application thereof." In the case of *State* v. *Shain*, 343 Mo. 66, 119 S. W. 2d 971, also relied upon by appellants, the court also construed the wording of the bond as limiting liability only to money actually coming into the fiduciary's hands.

The obligation in Dr. Preston's bond as guardian was that he "would perform the duties of guardian and curator according to law." This obligation was in compliance with § 6242 of Pope's Digest which requires guardians to give bond "conditioned for the faithful discharge of their duties according to law." The liability of a guardian under our statute, and the condition of the bond here, is not limited to funds or property which actually come into his hands or under his control. The question then arises as to whether Dr. Preston had any duty to perform as guardian, even though he was not entitled to a transfer of funds to the guardian's account; and, if so, whether he breached that duty.

In 39 C. J. S., Guardian and Ward, § 76, the author, in stating the duties of a guardian, says: "He must be faithful, vigilant, and competent in the management of his ward's estate, and is bound to exercise therein such diligence and prudence as reasonable men ordinarily employ in the conduct of their own affairs, this being the test as between constructive fraud and a mere error of judgment; and he will be held liable for any losses which result from his failure to exercise such prudence, due care, and diligence, or from an overt act of mismanagement." Many cases are cited by appellees which support the foregoing statement. In *Munoz* v. *Merchants National Bank,* 49 Fed. Supp. 588, the court held it to be the duty of a guardian to act in order to preserve the assets of a ward in a foreign country. In *Layne, et al.* v. *Clark,* 152 Ky. 310, 153 S. W. 437, a guardian who knowingly permitted timber belonging to his ward to be deadened in order to bring it within the terms of a contract of sale, was held liable although he received none of the proceeds of such sale.

It is undisputed that Dr. Preston, as guardian of his minor children, not only knew that the property of his wards was being dissipated, but actually participated therein. As guardian he afforded the only protection of the wards against the unfaithfulness of anyone having control of their property. He stood by for five years while the executor failed to file annual accountings without filing exceptions or reporting such non-feasance to the court. He failed to enforce his wards' rights and did not exercise the care of an ordinarily prudent man to preserve the estates of his wards from plunder. Certainly if another had acted as trustee and converted the assets of the minors to his own use, Dr. Preston, as guardian, would not be permitted to actively participate in such unlawful conversion without becoming liable for breach of a solemn duty to his wards. In short, Dr. Preston did not "perform the duties of guardian and curator according to law," and his estate and surety are liable for the loss occasioned by such failure. The chancellor correctly so held, and the decree is accordingly affirmed.